1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES LORAN QUINN,**<br><br>                    **Plaintiff,**<br><br>        **v.**<br><br>**FRESNO COUNTY SHERIFF, et al.,**<br><br>                    **Defendants.** | **1:10-cv-01617-OWW-SMS**<br><br>**MEMORANDUM DECISION REGARDING MOTION TO DISMISS (Doc. 10)** |

## I. INTRODUCTION.

Plaintiff James Loran Quinn "Plaintiff" proceeds with an action pursuant to 42 U.S.C. § 1983 against various Defendants. Plaintiff filed his second amended complaint ("SAC") on October 8, 2010.  (Doc. 7).

On October 18, 2010, Defendants David Alanis ("Alanis") and the County of Fresno ("the County") filed a motion to dismiss the SAC.  (Doc. 10).  Plaintiff filed opposition to the motion to dismiss on November 8, 2010. (Doc. 12).  Alanis and the County filed a reply to Plaintiff's opposition on November 15, 2010. (Doc. 13).

On November 15, 2010, Alanis, the County, and Defendant Linda M. Penner ("Penner") filed a second motion to dismiss.  (Doc. 14). Plaintiff filed opposition to the second motion to dismiss on

**1**

January 21, 2011.  (Doc. 18).  Defendants filed a reply on January 21, 2011.  (Doc. 19).

## II. **FACTUAL BACKGROUND**.

Plaintiff pled guilty to driving under the influence on September 5, 2005, and was sentenced to five years of formal probation.  (SAC at 3).  The terms of Plaintiff's probation require him to file a report each month with the probation department.  (SAC at 3).  In October 2006, Alanis was designated as Plaintiff's probation officer.  (SAC at 3).

On December 4, 2006, Plaintiff personally delivered his monthly report form for December to Alanis at the probation department office.  (SAC at 4).  Upon turning in his monthly report form, Plaintiff had a conversation with Alanis.  (SAC at 4).  Sometime prior to January 11, 2007, Plaintiff personally delivered January's monthly report form to the probation department office.  (SAC at 4).  Plaintiff spoke with Alanis when he visited the probation department office to turn in his January monthly report.  (SAC at 4).  On or about February 5, 2007, Plaintiff personally delivered February's monthly report form to the probation department office.  (SAC at 4).

**Plaintiff's Arrest**

On February 12, 2007, Detective Mark VanWyhe of the Fresno Police Department contacted Alanis to inquire about Plaintiff's probation status.  (SAC at 4).  In response to VanWyhe's inquiry, Alanis checked the probation department's Adult Probation System ("APS"), a computer data-base which contains scanned copies of individuals' monthly report forms.  (SAC at 4).  Alanis found that Plaintiff's monthly report forms for December 2006, January 2007,

and February 2007 were missing. (SAC at 4). According to Alanis, he checked Plaintiff's physical probation file and discovered that it did not contain Plaintiff's monthly report forms for December 2006, January 2007, or February 2007. (SAC at 4). Alanis told VanWyhe to arrest Plaintiff for violating the monthly report requirement of his probation. (SAC at 4-5). The SAC alleges that, at all times, VanWyhe was acting pursuant to Alanis' direction and was Alanis' authorized agent. (SAC at 6).

The SAC alleges that VanWyhe went to Plaintiff's place of business and announced that he was arresting Plaintiff due to Plaintiff's failure to file three monthly report forms. Plaintiff responded he had copies of the three forms in question with probation department date stamps in his office. (SAC at 5). VanWhye stated that he would not waste time to consider Plaintiff's evidence of compliance with the monthly report requirements and informed Plaintiff that he was going to jail. (SAC at 5).

VanWyhe reported to Alanis that Plaintiff told him that Plaintiff had submitted the three missing reports, but Alanis instructed VanWhye to perfect the arrest. (SAC at 5). VanWyhe transported Plaintiff to the booking area of the Fresno County Jail. (SAC at 5). Alanis took charge of the arrest once Plaintiff arrived at the Fresno County Jail. (SAC at 5). Plaintiff reminded Alanis that he had personally submitted his December 2006 report to him and that Alanis had engaged in a discussion with Plaintiff at that time. (SAC at 5). Plaintiff then asked Alanis when he would go before a judge, and Alanis replied "you wont" and then said something to the effect of "this is a lesson to you." (SAC at 5). Plaintiff then told Alanis that he had proof in his office that he

**3**

1   had submitted the monthly reports in question to the probation
2   office. (SAC at 5). Alanis refused to listen to Plaintiff and
3   told Plaintiff he was not interested in Plaintiff's explanation or
4   proof. (SAC at 5-6).

5       Sometime before being placed with the general population,
6   Plaintiff, in Alanis' presence, spoke to his former wife, Deborah,
7   on the telephone. (SAC at 6). Deborah agreed to leave work and to
8   retrieve the conformed copies of Plaintiff's monthly reports from
9   Plaintiff's office. (SAC at 6). Deborah subsequently called
10  Alanis and told him she had found the conformed copies of the three
11  monthly reports. (SAC at 6). Alanis told Deborah that she didn't
12  have all of the reports, and that it didn't matter whether she did
13  or not because Alanis could throw Plaintiff in jail whenever he
14  wanted to. (SAC at 6).

15      The SAC alleges that the probation department moved offices in
16  January 2007, and that at the time he authorized Plaintiff's
17  arrest, Alanis knew, or should have known, that the APS system's
18  information was not up to date because staffing shortages prolonged
19  the scanning process. (SAC at 8).

20  **Plaintiff's Medical Treatment**

21      At the time of his arrest, Plaintiff was suffering from heart
22  disease and was taking several prescription medications daily. (SAC
23  at 6). Plaintiff told Alanis that he was a cardiac patient and
24  needed his heart medications because he had not taken them prior to
25  his arrest. (SAC at 7). Alanis ignored Plaintiff's request. (SAC
26  at 7). Additionally, as part of the booking process, Plaintiff's
27  prescription pain medication was taken from him and never returned.
28  (SAC at 7). By 2200 hours on February 12, 2007, Plaintiff was

**4**

1   experiencing severe and increasing pain in his chest. (SAC at 7).
2   Plaintiff was given nitroglycerin, which did not address his needs.
3   Plaintiff submitted an inmate grievance form on February 13, 2007,
4   requesting medical attention for his unstable heart condition.
5   (SAC at 7). Plaintiff's associate delivered Plaintiff's medication
6   to the Fresno County Jail some time on February 13, 2007; the
7   medication was never given to Plaintiff. (SAC at 7).

8        Plaintiff's request for medical attention was ignored until
9   the early morning hours of February 14, 2007; by that time,
10  Plaintiff's cellmate had flagged down the nurse on duty, who
11  recognized that Plaintiff's condition was very serious. (SAC at
12  7). An EKG and blood pressure measurement confirmed that Plaintiff
13  was in extremis, and Plaintiff was immediately transferred to an
14  emergency room. (SAC at 7). Alanis subsequently learned that
15  Plaintiff had been hospitalized and contacted the Fresno County
16  Jail to advise that Alanis would not pursue a formal violation and
17  would deal with Plaintiff "out of custody." (SAC at 8). Alanis
18  completed necessary paperwork, and Plaintiff was released from
19  custody while still hospitalized. (SAC at 8). Plaintiff was
20  discharged from the hospital on February 17, 2007. (SAC at 8).

21                    **III. <u>LEGAL STANDARD</u>.**

22       Dismissal under Rule 12(b)(6) is appropriate where the
23  complaint lacks sufficient facts to support a cognizable legal
24  theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th
25  Cir.1990). To sufficiently state a claim to relief and survive a
26  12(b)(6) motion, the pleading "does not need detailed factual
27  allegations" but the "[f]actual allegations must be enough to raise
28  a right to relief above the speculative level." *Bell Atl. Corp. v.*

**5**

*Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss,

**6**

if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

**IV. <u>DISCUSSION</u>.**

**A. Plaintiff's Federal Claims**

    **1.   Statute of Limitations Issue**

    Defendants contend that Plaintiff's federal claims are time-barred because the SAC contains factual details not alleged in Plaintiff's original complaint.   Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides in part:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence  set out--or attempted to be set out--in the original pleading

Claims arise out of the same conduct, transaction, or occurrence if they "share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989) and *Percy v. S.F. Gen. Hosp.,* 841 F.2d 975, 978 (9th Cir. 1988)). Where an amendment seeks to assert a new legal theory of recovery based on the same facts alleged in the original pleading, the

**7**

relation back doctrine applies.  *See id.*

Contrary to Defendants' frivolous argument that new facts alleged in the SAC "dramatically alter the factual allegations of this case and are being utilized to support new theories of liability," (Motion to Dismiss at 9),[1] the SAC merely contains additional details regarding the same conduct and transactions identified in Plaintiff's original complaint.  The SAC expressly relates back to the allegations made in Plaintiff's original complaint with respect to Plaintiff's claims arising out of Plaintiff's alleged probation violation arrest and the Fresno County Jail's failure to provide Plaintiff medical care.[2]

### 2. Unreasonable Arrest Claim

#### a. Defendant Alanis

Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to cause a prudent person to believe that the suspect has committed an offense.  *E.g. Crowe v. County of San Diego*, 593 F.3d 841, 868 (9th Cir. 2010) (citation omitted).  In determining whether there was probable cause to arrest, a court reviews the totality of circumstances known to the arresting officers to determine if a

---

[1] Defendants also complain that the SAC contains factual allegations that contradict the allegations contained in the original complaint-specifically, the SAC alleges Plaintiff received some medical treatment at the Fresno County Jail, whereas the original complaint alleged he received none.  However, Defendants do not assert that Plaintiff is judicially estopped from asserting the contradictory allegations, which are actually favorable to Defendants.  Nor do Defendants articulate how the allegedly contradictory statements alter the nature of Plaintiffs' unlawful arrest claim.

[2] Plaintiff's medical malpractice claim is the one claim that may be subject to dismissal on statute of limitations grounds.  As discussed below, dismissal of the malpractice claim with prejudice is inappropriate at this time because the nature of Plaintiff's medical malpractice claim is unclear as currently pled.

prudent person would have concluded there was a fair probability that the defendant had committed a crime. *Id*. While evidence supporting probable cause need not be admissible in court, it must be legally sufficient and reliable. *Id*. Law enforcement may not disregard facts tending to dissipate probable cause. *Id*.

The SAC does not allege facts sufficient to establish that Alanis lacked probable cause to believe Plaintiff was subject to arrest under California Penal Code section 1203.2(a), which provides:

> [a]t any time during the probationary period of a person released on probation under the care of a probation officer pursuant to this chapter... if any probation officer or peace officer has probable cause to believe that the probationer is violating any term or condition of his or her probation or conditional sentence, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the person and bring him or her before the court.

Cal. Pen. Code § 1203.2(a).  In light of the allegations contained in the SAC, which do not assert Alanis had specific actual knowledge of filing of the reports, Alanis could have had probable cause to believe that Plaintiff had violated the terms of his probation by failing to file one or more monthly reports.  This appears to be a disputed fact.

The SAC alleges that Alanis reviewed both the APS system and Plaintiff's physical file which revealed that three of Plaintiff's monthly reports were missing.  Although the complaint alleges that Alanis had reason to know that the information contained in the APS system was not up to date, and thus of limited reliability, the complaint does not clearly allege that Alanis had any reason to know that Plaintiff's physical probation file was unreliable.  Nor

**9**

does the complaint clearly allege that Plaintiff's physical file contained the three missing monthly reports.   Assuming *arguendo* that Alanis knew that Plaintiff had turned in his December report, Alanis had probable cause to believe that Plaintiff had not turned in the January and February reports based on his review of Plaintiff's physical file and the APS.[3]

The SAC's allegations that Plaintiff and his former wife each told Alanis that they had conformed copies of the missing reports are insufficient to render Plaintiff's arrest violative of the Fourth Amendment.   Once an officer has probable cause to effect an arrest, the Constitution does not require the officer to investigate independently an arrestee's claim of innocence. *See Ewing v. City of Stockton,* 588 F.3d 1218, 1227 (9th Cir. 2010)*; Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).   The FAC does not allege that Alanis was ever presented with evidence of Plaintiff's innocence; rather, the SAC merely alleges that Plaintiff and his former wife told him that such evidence existed. Although law enforcement may not disregard facts tending to dissipate probable cause, *see Crowe*, 593 F.3d at 868, Alanis was under no constitutional duty to conduct a further investigation into Alanis' innocence, *Ewing*, 588 F.3d at 1227 (citation omitted). Plaintiff's section 1983 claim based on his arrest is DISMISSED, without prejudice.

///

///

---

[3]  The SAC alleges that Plaintiff spoke with Alanis at the probation office when he turned in his January report, but does not allege that Alanis had personal knowledge that Plaintiff turned in his report at that time.

**10**

**b. Defendant Penner**[4]

The eighth and ninth causes of action alleged in the SAC assert claims under section 1983 against Defendant Penner. Defendant Penner was the Chief Probation Officer at all times relevant to the SAC.   The SAC does not allege any direct involvement by Penner in Plaintiff's arrest.

Courts have found supervisorial liability under section 1983 where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001)).  Supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates;  2)  their  acquiescence  in  the  constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).  As the SAC fails to allege a constitutional violation based on Plaintiff's arrest, it does not state a claim against Penner under section 1983.   The SAC is also deficient because it does not allege sufficient facts to establish that Penner participated in or failed to train, supervise, or control Alanis, that Penner acquiesced to any constitutionally violative conduct, or that she ratified any wrongful conduct with knowledge.  Plaintiff's section 1983 claim

---

[4] As Plaintiff concedes, the SAC does not comply with the technical requirements of California law regarding amendment of complaints to name doe defendants. (Doc. 18, Opposition at 6-7).   Defendants fail to articulate any prejudice resulting from Plaintiff's technical error, which is easily cured by amendment.

against Penner is DISMISSED, without prejudice.

### 3. Plaintiff's Medical Treatment Claim

Claims that correctional facility officials violated a pretrial detainee's constitutional rights by failing to address their medical needs are evaluated under a "deliberate indifference" standard. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) (noting that standard is the same for pretrial detainees under Fourteenth Amendment as for prisoners under Eighth Amendment). A correctional officer cannot be liable for deliberate indifference unless she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citation omitted).

Plaintiff's section 1983 claim arising out of his medical treatment is advanced only against the County of Fresno. There are three theories of municipal liability under section 1983:

> First, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury...
>
> Second, under certain circumstances, a local government may be held liable under § 1983 for acts of "omission," when such omissions amount to the local government's own official policy. To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to "deliberate indifference" to a constitutional right. This standard is met when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need...
>
> Third, a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's

**12**

1

2

3   unconstitutional decision or action and the basis for it.

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th

Cir. 2010). Unlike the deliberate indifference standard applicable

to individuals, the standard applicable to municipal entities is an

objective standard. *Clouthier*, 591 F.3d at 1249, n.9.

6      Plaintiff alleges that the Fresno County Jail had in place

7   policies which interfered with prisoners' access to vital

8   prescription medications, and that Fresno County Jail employed a

9   policy of failing to properly train and supervise jail staff to

10  ensure provision of vital prescription medications. (SAC at 20).

11  Plaintiff's allegations regarding the policies in place at the

12  Fresno County Jail are supported by reasonable inferences drawn

13  from the SAC's factual allegations, as the SAC alleges that persons

14  responsible for Plaintiff's custody were on notice of facts from

15  which they could infer a substantial risk of serious harm to

16  Plaintiff but deliberately chose to ignore Plaintiff's requests for

17  help.[5]

18     The SAC alleges that when he arrived at the Fresno County

19  Jail, Plaintiff told Alanis that he was a cardiac patient, that he

20  needed heart medications, and that he had not taken his heart

21  medications prior to his arrest. (SAC at 7). The SAC also alleges

22  that prescription pain medication was taken from him during the

23

24

25  [5] Whether such persons actually drew the inference that Plaintiff faced a
    substantial risk of serious harm is a question of fact. *E.g. Farmer v. Brennan*,
26  511 U.S. 825, 842 (1994) ("[w]hether a prison official had the requisite
    knowledge of a substantial risk is a question of fact subject to demonstration
27  in the usual ways, including inference from circumstantial evidence...a
    factfinder may conclude that a prison official knew of a substantial risk from
28  the very fact that the risk was obvious). Plaintiff does not name any individual
    defendants in his medical care claim under section 1983, however.

booking process, and that Plaintiff's grievance form requesting medical attention for his unstable heart condition was ignored.[6] (SAC at 7). According to the SAC, Plaintiff did not receive any medical attention until his cellmate flagged down the on-duty nurse after Plaintiff's condition had become critical. (SAC at 7). Plaintiff's allegations support a reasonable inference that Fresno County Jail has a policy of failing to administer prescription medication even where it appears that such medication is needed to stabilize obviously serious medical conditions. The SAC's allegations also support the inference that Fresno County Jail fails to properly train its staff regarding the urgency entailed by detainees' requests for medical attention concerning potentially life-threatening medical conditions.

**B. State Claims**

    **1. Claims Derivative of Plaintiff's False Arrest Allegation**

        **a. Defendant Alanis**

The SAC asserts the following state law claims against Alanis based on Plaintiff's purportedly unlawful arrest: violation of California Civil Code section 52.1 (third cause of action); respondeat superior (fourth and thirteenth cause of action); common law false arrest (fifth and sixth cause of action); intentional infliction of emotional distress (eleventh cause of action); and negligence (twelfth cause of action). As the complaint does not state facts sufficient to allege that Plaintiff's arrest was not supported by probable cause, each of Plaintiff's state law claims

---

[6] Although the fact that Plaintiff's pain medication was taken away does not reflect deliberate indifference in and of itself, it does support an inference that the Fresno County Jail was on notice that Plaintiff was under the care of a physician.

**14**

premised on Plaintiff's arrest must be DISMISSED, without prejudice. *See, e.g., Wood v. Emmerson*, 155 Cal. App. 4th 1506, 1514 (Cal. Ct. App. 2007) (liability for false arrest under California Civil Code section 52.1 turns on whether arrest was violative of Fourth Amendment); *see also Salazar v. Upland Police Dept.*, 116 Cal. App. 4th 934, 947-48 (Cal. Ct. App. 2004) (cause of action for false arrest foreclosed by existence of probable cause); *Bulkley v. Klein*, 206 Cal. App. 2d 742, 751 (Cal. Ct. App. 1962) (noting that probable cause inquiry is essentially coextensive with negligence inquiry); *Scannell v. County of Riverside*, 152 Cal. App. 3d 596, 615 (Cal. Ct. App. 1984) (noting that unreasonable action is an essential element of claim for intentional infliction of emotional distress).

### b. Defendant Penner

The first, second, and tenth causes of action assert state law claims against Defendant Penner predicated on Plaintiff's allegation of false arrest.

### (i) First Cause of Action

The SAC's first cause of action is for negligent supervision and training. Plaintiff asserts that Penner was negligent in two respects: (1) Penner "breached her statutory duty to devote a reasonable and sufficient amount of time and service to training and supervising [Alanis]...regarding the propriety of arresting and detaining...probationers...in the absence of exigent circumstances;" and (2) Penner "breached her statutory duty to keep a complete and accurate written record of the conduct of Plaintiff." (SAC at 9-20).

///

"Under [California's] Government Claims Act (Cal. Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute." *E.g., Guzman v. County of Monterey*, 46 Cal. 4th 887, 897 (Cal. 2009). Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty. *Id.* (citations omitted). California courts construe the mandatory duty requirement strictly, "finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" *Id.* at 898 (citations omitted).

With respect to Plaintiff's first theory, the SAC identifies the source of Penner's purported duty as California Penal Code section 1203.71. Section 1203.71 provides, in pertinent part:

> Any of the duties of the probation officer may be performed by a deputy probation officer and shall be performed by him or her whenever detailed to perform those by the probation officer; and it shall be the duty of the probation officer to see that the deputy probation officer performs his or her duties.

Although section 1203.71 appears to impose an affirmative duty of supervision on the probation officer, it does not provide implementing guidelines. Assuming *arguendo* that section 1203.71 imposes a mandatory duty sufficient to give rise to liability under California's Government Claims Act, the SAC is deficient. The SAC does not to allege that Penner's alleged breach of her supervisory duties proximately caused Plaintiff any actionable injury, as the

allegations of the SAC indicate that Plaintiff's arrest was supported by probable cause. *See Salazar*, 116 Cal. App. 4th at 947-48 (cause of action for false arrest foreclosed by existence of probable cause); *Bulkley*, 206 Cal. App. 2d at 751 (noting that probable cause inquiry is essentially coextensive with negligence inquiry). The existence of probable cause was an intervening cause of Plaintiff's arrest that severed any causal relationship between Penner's purported lack of supervision and training and Plaintiff's arrest.

With respect to Plaintiff's second theory, Plaintiff's contention that California Penal Code section 1203.10 imposes a mandatory duty to maintain monthly reports is dubious. *See Whitcombe v. County of Yolo*, 73 Cal. App. 3d 698, 707 (Cal. Ct. App. 1977) ("Next, we examine appellants' contention that Penal Code section[] 1203.10 impose[s] mandatory duties upon the county...We fault the argument inasmuch as we find *among other things* the proximate cause requirement of section 815.6 unsatisfied by the facts in this case.") (emphasis added). Section 1203.10 does not provide implementing guidelines for the preparation and maintenance of monthly reports. In fact, the plain language of section 1203.10 does not require the probation officer to prepare monthly reports at all:

> At the time of the plea or verdict of guilty of any person over eighteen years of age, the probation officer of the county of the jurisdiction of said criminal shall, when so directed by the court, inquire into the antecedents, character, history, family environment, and offense of such person, and must report the same to the court and file his report in writing in the records of such court. When directed, his report shall contain his recommendation for or against the release for such person on probation. If any such person shall be released on probation and committed to the care of the probation

**17**

officer, such officer shall keep a complete and accurate record in suitable books or other form in writing of the history of the case in court, and of the name of the probation officer, and his act in connection with said case; also the age, sex, nativity, residence, education, habit of temperance, whether married or single, and the conduct, employment and occupation, and parents' occupation, and condition of such person committed to his care during the term of such probation and the result of such probation. Such record of such probation officer shall be and constitute a part of the records of the court, and shall at all times be open to the inspection of the court or of any person appointed by the court for that purpose, as well as of all magistrates, and the chief of police, or other heads of the police, unless otherwise ordered by the court. Said books of records shall be furnished for the use of said probation officer of said county, and shall be paid for out of the county treasury.

Cal. Penal Code § 1203.10.

To the extent section 1203.10 gives rise to a mandatory duty to prepare and maintain the monthly progress reports at issue in this case, such duty is not "designed to protect against the risk of a particular kind of injury" Plaintiff complains of.[7]   In supervising a person on probation, and in compiling and keeping the required records, the probation department acts as an arm of the court.  *County of Placer v. Superior Court*, 130 Cal. App. 4th 807, 814 (Cal. Ct. App. 2005) *accord McGuire v. Superior Court*, 12 Cal.

---

[7] At oral argument, Plaintiff's counsel argued that *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710, 715 (Cal. 1974) supports the its contention that section 1203.10 is sufficient to give rise to liability.  *Sullivan* is inapposite; the duty at issue in that case was the duty to release a prisoner after expiration of a sentence pursuant to California Penal Code section 1384. *Bradford v. State of California* 36 Cal. App. 3d 16 (1973), discussed in *Sullivan*, is also inapposite.  Bradford concerned the reporting duties imposed by California Penal Code sections 11116 and 11116.6, pursuant to which the State is obligated to record the dismissal of charges against a defendant.  *Bradford* held that the reporting duties at issue were "clearly designed" to avoid the danger of future illegal arrest and incarceration, a point that was in fact conceded by the defendants in that case.  *Id.* at 21.  To the extent section 1203.10 is designed in part to protect against the harm Plaintiff suffered, it is not clearly designed to do so.

App. 4th 1685, 1687 (Cal. Ct. App. 1993) ("the probation officer keeps the file both for his own benefit and for the benefit of the court"). The courts' role with respect to the records discussed in section 1203.10 is to review such records when exercising discretion to revoke, modify, or change the conditions of a person's probation. *See, e.g., People v. Segura*, 44 Cal. 4th 921, 932 (Cal. 2008). The applicable statutory framework does not suggest that records prepared pursuant to section 1203.10 are to be used by the court to protect probationers from imprudent arrests.

Even assuming *arguendo* that Plaintiff's claim under section 1203.10 is legally tenable, the SAC does not allege facts sufficient to establish Penner's liability. The allegation that Plaintiff's monthly reports were not properly scanned into the ATS system or where otherwise mishandled does not, without more, support an inference of negligence on Penner's part. The SAC is devoid of allegations regarding Penner's role in preparing and maintaining Plaintiff's records.

### **(ii)** Second and Tenth Causes of Action

The second (respondeat superior) and tenth (Cal. Civ. Code § 52.3) causes of action are derivative of Penner's liability for Plaintiff's arrest. As the SAC does not state any claim against Penner, the second and tenth causes of action fail.

Defendants contend that California Civil Code section 52.3 does not provide a private right of action. At least two district courts in California have held that section 52.3 does not provide a private right of action. *Garcia v. City of Ceres*, 2009 U.S. Dist. LEXIS 16165 *30 (E.D. Cal. 2009); *Akhtarshad v. City of Corona*, 2009 U.S. Dist. LEXIS 10979 *19 n.4 (C.D. Cal. 2009). In

**19**

response, Plaintiff cites *Ley v. State of California*, 114 Cal. App. 4th 1297, 1306 (Cal. Ct. App. 2004) and *Cabral v. County of Glenn*, 624 F. Supp. 2d 1184, 1993 (E.D. Cal. 2009), two cases in which courts implicitly held that section 52.3 creates a private right of action.   As the SAC fails to state a claim, resolution of the parties' dispute is unnecessary at this time.

### 2. State Law Medical Care Claims

The SAC asserts two state law claims arising out of the medical care Plaintiff received at the Fresno County Jail: (1) violation of California Government Code section 845.6 (fourteenth cause of action); and (2) medical malpractice (sixteenth cause of action).

### a. Section 845.6 Claim

California Government Code section 845.6 provides in pertinent part:

> a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov. Code § 845.6.  The SAC alleges that Alanis was on notice of facts which gave him reason to know that Plaintiff was in need of immediate medical care in the form of his prescription heart medication.   The SAC also alleges that Alanis failed to take reasonable action to summon the medical care required by Plaintiff, and that the formal medical grievance Plaintiff filed with jail staff was ignored until Plaintiff's condition deteriorated so far that his cellmate had to flag down a nurse.   The SAC states a claim under section 845.6.

1    Defendants cite *Lawson v. Superior Court*, 180 Cal. App. 4th
2  1372, 1375, 1385 (Cal. Ct. App. 2010) for the proposition that
3  "under California precedent, even if Plaintiff was denied his
4  prescription medications, said denial, does not amount to neglect
5  of a serious medical condition." (Motion to Dismiss at 16).
6  *Lawson* is inapposite. *Lawson* concerned depravation of a pregnant
7  prisoner's unidentified pregnancy medications and a breast pump.
8  *Lawson* did not hold that deprivation of prescription medications is
9  never sufficient to establish liability under section 845.6 as a
10 matter of law. Rather, in *Lawson*, the trial court concluded that
11 denial of medications and a breast pump did not amount to neglect
12 of a serious and obvious medical condition. 180 Cal. App. 4th at
13 1385. Here, the facts alleged in the SAC are sufficient to find
14 that Alanis knew Plaintiff needed daily doses of prescription heart
15 medications. Plaintiff's need for heart medication is not
16 analogous to a pregnant women's need for a breast pump and
17 unspecified pregnancy medications.[8]

18   Defendants also cite *White v. Superior Court*, 225 Cal. App. 3d
19 1505, 1509 (1990) in support of the contention that "[f]ailure of
20 a medical practitioner to prescribe or provide necessary
21 medications or treatment to one he is summoned to assist cannot,
22 within the plain meaning of the statutory language, constitute
23 failure to summon medical care." (Motion to Dismiss at 16). *White*

24

25 [8] There can be no doubt that, in some instances, denial of pregnancy medications
26 to a pregnant prisoner can support liability under section 845.6 where it is
   obvious to correctional officials that, given the nature of the medications,
27 deprivation poses a risk of serious harm to the prisoner. In *Lawson*, however,
   the complaint did not contain the requisite specificity needed to establish that
28 deprivation of the plaintiff's unspecified "pregnancy medications" implicated a
   serious risk of harm.

is not applicable to Plaintiff's allegations.  Plaintiff's claim under section 845.6 is based on his allegation that medical care was not timely summoned, and that as a result, he was deprived of his medication.  Plaintiff does not allege that medical practitioner was summoned to provide care, but then failed to prescribe or provide the proper medication.[9]

Finally, Defendants cite *Watson v. State of California*, 21 Cal. App. 4th 836, 842 (Cal. Ct. App. 1993) and *Nelson v. State of California*, 139 Cal. App. 3d 72, 78-9 (Cal. Ct. App. 1982) in support of the argument that

> section 845.6 contains a distinction between a public entity employee who is "lawfully engaged in the practice of the healing arts" and an employee who is not...Defendant COUNTY cannot be vicariously liable for any alleged medical malpractice of its employees.

(Motion to Dismiss at 16-17).  Defendants' attempt to conflate Plaintiff's cause of action under section 845.6 (fourteenth cause of action) with Plaintiff's separate claim for medical malpractice (sixteenth cause of action) is unavailing.  As Defendants' own authorities recognize, a claim for medical malpractice is distinct from a claim under section 845.6.  *See id*.  Section 845.6 expressly provides that "a public employee, *and the public entity* where the employee is acting within the scope of his employment, is liable" for violations of section 845.6.  Cal. Gov. Code § 845.6 (emphasis added).

### b. Medical Malpractice Claim

The SAC asserts a claim for medical malpractice against County

---

[9] The SAC does allege that Plaintiff was given nitroglycerin at some point, but does not allege that he received it from a physician.  Further, the SAC alleges that Plaintiff filed a request for medical attention *after* he received the nitroglycerin, and that the request was ignored for approximately a day.

of Fresno.  Defendants point out, and Plaintiff concedes, that the SAC inappropriately asserts the malpractice claim against the County of Fresno rather than the health care provider.  Plaintiff contends that the malpractice claim should survive the motion to dismiss because the claim is cognizable against one or more Doe Defendants.

The SAC fails to allege facts sufficient to state a medical malpractice claim.  The elements of a medical malpractice claim under California law are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  *Avivi v. Centro Medico Urgente Medical Center*, 159 Cal. App. 4th 463, 468 n. 2 (Cal. Ct. App. 2008).

The only allegations contained in the SAC regarding medical treatment given to Plaintiff are: (1) Plaintiff was given nitroglycerin on February 12, 2007, which did not address his cardiac condition; and (2) a nurse performed diagnostic testing of Plaintiff on February 14, 2007, determined he was in extremis, and immediately transferred Plaintiff to the emergency room of University Hospital.  (SAC at 7).  With respect the SAC's first allegation, the SAC fails to allege that a medical professional was responsible for giving Plaintiff nitroglycerin and fails to allege facts sufficient to support an inference that administering nitroglycerin to Plaintiff breached the applicable duty of care under the circumstances.  With respect to the care Plaintiff was

**23**

afforded on February 14, the complaint does not allege facts sufficient to support an inference that immediately transferring Plaintiff to the emergency room breached the applicable duty of care under the circumstances.

Defendants contend that Plaintiff's malpractice claim is time-barred. Because the nature of Plaintiff's malpractice claim is unclear given the deficiencies of the SAC, whether Plaintiff's claim is time barred cannot be determined at this time.

## ORDER

For the reasons stated, IT IS ORDERED:

1) Plaintiff's section 1983 claims arising out of Plaintiff's arrest are DISMISSED, without prejudice;

2) All state law claims based on Plaintiff's arrest are DISMISSED, without prejudice;

3) Defendants' motion to dismiss Plaintiff's section 1983 claim for deliberate indifference to his medical needs is DENIED;

4) Defendants' motion to dismiss Plaintiff's claim under California Government Code section 845.6 is DENIED;

5) Plaintiff's medical malpractice claim is DISMISSED, without prejudice,

6) Plaintiffs shall file an amended complaint within fourteen (14) days of service of the Memorandum Decision.  Defendants shall filed a response within ten (10) days of service of the amended complaint; and

7) Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.

**24**

IT IS SO ORDERED.

**Dated:**    **February 8, 2011**                       **/s/ Oliver W. Wanger**
                                               UNITED STATES DISTRICT JUDGE