1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMES LORAN QUINN,**<br><br>                    **Plaintiff,**<br><br>      **v.**<br><br>**FRESNO COUNTY SHERIFF, et al.,**<br><br>             **Defendants.** | **1:10-cv-01617-OWW-SMS**<br><br>**MEMORANDUM DECISION REGARDING MOTION TO DISMISS (Doc. 30)** |

**I. <u>INTRODUCTION</u>.**

Plaintiff James Loran Quinn "Plaintiff" proceeds with an action pursuant to 42 U.S.C. § 1983 against various Defendants. Plaintiff filed his third amended complaint ("TAC") on March 2, 2011. (Doc. 27).

On March 11, 2011, Defendants David Alanis ("Alanis") and the County of Fresno ("the County") filed a motion to dismiss the SAC. (Doc. 30). Plaintiff filed opposition to the motion to dismiss on April 18, 2011. (Doc. 32).

**II. <u>FACTUAL BACKGROUND</u>.**

Plaintiff pled guilty to driving under the influence on September 5, 2005, and was sentenced to five years of formal probation. The terms of Plaintiff's probation require him to file a report each month with the probation department. In October

1   2006, Alanis was designated as Plaintiff's probation officer.

2       On December 4, 2006, Plaintiff personally delivered his
3   monthly report form for December to Alanis at the probation
4   department office.  Upon turning in his monthly report form,
5   Plaintiff had a conversation with Alanis.  Sometime prior to
6   January 11, 2007, Plaintiff personally delivered January's monthly
7   report form to the probation department office.  Plaintiff spoke
8   with Alanis when he visited the probation department office to turn
9   in his January monthly report.  Plaintiff alleges that he also
10  timely submitted his February 2007 report, but the TAC does not
11  allege how or when he did so.

12  **Plaintiff's Arrest**

13      On February 12, 2007, Alanis caused Detective Mark VanWyhe of
14  the Fresno Police Department to arrest Plaintiff for failing to
15  submit monthly reports for December 2006, January 2007, and
16  February 2007.  The SAC alleges that VanWyhe went to Plaintiff's
17  place of business and announced that he was arresting Plaintiff due
18  to Plaintiff's failure to file three monthly report forms.
19  Plaintiff responded he had copies of the three forms in question
20  with probation department date stamps.  VanWhye refused to give
21  Plaintiff time to find his conformed reports, which were located in
22  another room on the premises where Plaintiff was arrested.

23      At the time of his arrest, Plaintiff was suffering from heart
24  disease and was taking several prescription medications daily.
25  During the booking process, Plaintiff told Alanis that he was a
26  cardiac patient and needed his heart medications because he had not
27  taken them prior to his arrest.  Alanis ignored Plaintiff's
28  request.  (SAC at 7).  Additionally, as part of the booking

**2**

process, Plaintiff's prescription pain medication was taken from him and never returned.

By 2200 hours on February 12, 2007, Plaintiff was experiencing severe and increasing pain in his chest. Plaintiff was offered nitroglycerin, but Plaintiff informed jail personnel that it would not address his medical needs. Plaintiff submitted an inmate grievance form on February 13, 2007, requesting medical attention for his unstable heart condition. Plaintiff's associate delivered Plaintiff's medication to the Fresno County Jail some time on February 13, 2007; the medication was never given to Plaintiff.

Plaintiff's request for medical attention was ignored until the early morning hours of February 14, 2007; by that time, Plaintiff's cellmate had flagged down the nurse on duty, who recognized that Plaintiff's condition was very serious. An EKG and blood pressure measurement confirmed that Plaintiff was in grave danger, and Plaintiff was immediately transferred to an emergency room. Plaintiff was discharged from the hospital and released from custody on February 17, 2007.

### III. **LEGAL STANDARD**.

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the

**3**

elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

**4**

summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

### IV. DISCUSSION.

**A. Preliminary Matters**

**1. Defendants Statute of Limitations Argument**

Defendants persist in asserting frivolous statute of limitations arguments. Defendants urge the court to apply California Code of Civil Procedure section 474, which sets forth the procedure for naming "doe defendants" under California law, rather than the Federal Rule of Civil Procedure 15. The court previously advised Defendants' counsel that a similar statute of limitations argument was frivolous, as Plaintiff's allegations against Defendant Penner clearly relate back to the same transactions identified in the original complaint. The memorandum decision regarding Defendant's motion to dismiss the second amended complaint advised:

> Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides in part:
>
> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading
>
> Claims arise out of the same conduct, transaction, or occurrence if they "share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim. *Williams v. Boeing Co.*, 517

1

2

F.3d 1120, 1133 (9th Cir. 2008) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989) and *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988))...

3

4

5

6

Contrary to Defendants' frivolous argument...The SAC expressly relates back to the allegations made in Plaintiff's original complaint with respect to Plaintiff's claims arising out of Plaintiff's alleged probation violation arrest and the Fresno County Jail's failure to provide Plaintiff medical care.

7

8

9

10

11

(Doc. 21 at 7-8). Defendants' statute of limitations argument is devoid of merit. The remaining question is whether Defendant's counsel's intentional disregard of the court's prior admonition should be addressed under 28 U.S.C. § 1927.

12

13

14

**2. Defendants Redundancy Argument**

Defendants assert that claims against Defendant Penner in her official capacity are redundant because the County is named as a Defendant. However, some of Plaintiff's claims are directed against the County based on claims arising out of management of the county jail, while others assert claims against the County based on Penner's conduct as the Chief Probation Officer. Defendants cite no authority for the proposition that the alleged redundancy they complain requires dismissal of the TAC. The cases Defendants cite, *Center For Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 799 (9th Cir. 2008) and *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1206 (E.D. Cal. 2008) contain permissive, not mandatory language.

15

16

17

18

19

20

21

22

23

24

**3. State Law Immunities**

Defendants invoke a host of state law immunities. With respect to the immunities invoked on behalf of Defendant Penner in her official capacity, as discussed below, the complaint does not

25

26

27

28

**6**

allege any cognizable claim and it is unnecessary to reach the immunity issues.

Defendants invocation of California Penal Code section 847(b)(1) is premature. "Penal Code section 847, subdivision (b)(1) provides '[t]here shall be no civil liability on the part of ... any peace officer ... acting within the scope of his or her authority, for false arrest or false imprisonment ... [if][¶][t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.'" *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 510-11 (2006). Because, for reasons explained below, the TAC sufficiently alleges lack of probable cause, section 847 immunity cannot be granted at this stage in the proceedings.

Defendants invocation of California Penal Code section 845.8 is also premature.  Section 845.8 provides:

> Neither a public entity nor a public employee is liable for:
>
>   (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release

Nothing in the complaint indicates that Alanis made the decision to arrest Plaintiff was part of Alanis' decision to determine or revoke Plaintiff's parole or its conditions.  The provision does not apply.

**B. Federal Claims**

**1. Fourth Amendment Claim**

Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to

**7**

cause a prudent person to believe that the suspect has committed an offense. *E.g. Crowe v. County of San Diego*, 593 F.3d 841, 868 (9th Cir. 2010) (citation omitted).   In determining whether there was probable cause to arrest, a court reviews the totality of circumstances known to the arresting officers to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime.   *Id.*   While evidence supporting probable cause need not be admissible in court, it must be legally sufficient and reliable.   *Id.*   Law enforcement may not disregard facts tending to dissipate probable cause.   *Id.*

Defendants contend that the allegations contained in Plaintiff's dismissed complaints establish that Alanis had probable cause to believe Plaintiff was subject to arrest under California Penal Code section 1203.2(a), which provides:

> [a]t any time during the probationary period of a person released on probation under the care of a probation officer pursuant to this chapter... if any probation officer or peace officer has probable cause to believe that the probationer is violating any term or condition of his or her probation or conditional sentence, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the person and bring him or her before the court.

Cal. Pen. Code § 1203.2(a).   In previous complaints, Plaintiff alleged that Alanis checked the probation department's Adult Probation System ("APS"), a computer data-base which contains scanned copies of individuals' monthly report forms, as well as Plaintiff's physical probation file, and discovered that Plaintiff's monthly reports were missing.   The TAC does not contain

1   these allegations.[1]

2       The TAC asserts that Plaintiff turned in his monthly reports

3   for December, January, and February, and that Alanis had personal

4   knowledge that Plaintiff turned in his December and January

5   reports.  Accepting the allegations of the TAC as true, Alanis did

6   not have probable cause to arrest Plaintiff on the basis of the

7   missing monthly reports because Alanis had actual knowledge that at

8   least two of the reports in question were timely submitted.  A

9   reasonable officer with Alanis' alleged knowledge would have had

10  reason to know that the probation department's records were

11  inaccurate and thus insufficient to support probable cause.

12      Alanis is not entitled to qualified immunity at this time, as

13  the reasonableness of his conduct depends on questions of fact that

14  cannot be resolved by reference to allegations of the TAC.  No

15  reasonable officer at the time of the incident would have believed

16  that inaccurate and incomplete records could support a finding of

17  probable cause.  The motion to dismiss Plaintiff's fourth amendment

18  claim against Alanis is DENIED.

19          **2. Medical Treatment Claim**

20              **a. Defendant Alanis**

21      Claims that correctional facility officials violated a

22

23  [1] Contrary to Defendants' argument, Plaintiff's previous allegation that Alanis
    checked Plaintiff's APS and physical probation file does not establish that
24  Alanis actually did so.  In any event, assuming *arguendo* that Plaintiff is
    judicially estopped from asserting that Alanis did not check Plaintiff's
25  probation records, the TAC sufficiently alleges lack of probable cause because
    it alleges that Alanis had actual knowledge that Plaintiff turned in his December
26  and January reports.  No reasonable officer would rely on records he knew to be
    incomplete or inaccurate in ascertaining probable cause to effect an arrest.
27  *See, e.g., Crowe*, 593 F.3d at 868 (officers may not ignore facts dissipating
    probable cause).

28

pretrial detainee's constitutional rights by failing to address their medical needs are evaluated under a "deliberate indifference" standard. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) (noting that standard is the same for pretrial detainees under Fourteenth Amendment as for prisoners under Eighth Amendment). A correctional officer cannot be liable for deliberate indifference unless she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citation omitted).

The TAC alleges that Plaintiff "told Alanis he was a cardiac patient, that he needed his prescribed medications and that he had not been able to take them prior to being arrested." The TAC further alleges that Alanis "never did anything to alert the jailors to Plaintiff's pressing need...for medications." Although the TAC alleges that Alanis knew that Plaintiff was under the care of a physician and had been prescribed heart medication, the TAC does not allege that Alanis knew facts sufficient to put him on notice that Plaintiff's need for his medication was urgent. The TAC does not allege that, at the time of booking, Plaintiff was in such dire need of medical assistance that Alanis could have recognized that unless Alanis sought medical attention on Plaintiff's behalf, Plaintiff faced a substantial risk of serious harm. Plaintiff's medical care claim under section 1983 against Defendant Alanis is DISMISSED, without prejudice.

### b. The County

There are three theories of municipal liability under section

**10**

1983:

> First, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury...
>
> Second, under certain circumstances, a local government may be held liable under § 1983 for acts of "omission," when such omissions amount to the local government's own official policy. To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to "deliberate indifference" to a constitutional right. This standard is met when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need...
>
> Third, a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010). Unlike the deliberate indifference standard applicable to individuals, the standard applicable to municipal entities is an objective standard. *Clouthier*, 591 F.3d at 1249, n.9.

Plaintiff alleges that the Fresno County Jail had in place policies which interfered with prisoners' access to vital prescription medications, and that Fresno County Jail employed a policy of failing to properly train and supervise jail staff to ensure provision of vital prescription medications. Plaintiff's allegations regarding the policies in place at the Fresno County Jail are supported by reasonable inferences drawn from the TAC's factual allegations, as the TAC alleges that persons responsible for Plaintiff's custody were on notice of facts from which they could infer a substantial risk of serious harm to Plaintiff but

deliberately chose to ignore Plaintiff's requests for help.[2]

The TAC alleges that when he arrived at the Fresno County Jail, Plaintiff expressly told staff that he was a cardiac patient and that he needed heart medications. The TAC also alleges that prescription pain medication was taken from him during the booking process, and that Plaintiff's grievance form requesting medical attention for his unstable heart condition was ignored.[3] According to the TAC, Plaintiff did not receive any medical attention until his cellmate flagged down the on-duty nurse after Plaintiff's medical condition had become critical. Plaintiff's allegations support a reasonable inference that Fresno County Jail has a policy of failing to administer and/or withholding prescription medication even where it appears that such medication is needed to stabilize obviously serious medical conditions. The TAC's allegations also support the inference that Fresno County Jail fails to properly train its staff regarding the urgency entailed by detainees' requests for medical attention concerning potentially life-threatening medical conditions. The motion to dismiss is DENIED.

///

///

---

[2] Whether such persons actually drew the inference that Plaintiff faced a substantial risk of serious harm is a question of fact. *E.g. Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence...a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious). Plaintiff does not name any individual defendants in his medical care claim under section 1983, however.

[3] Although the fact that Plaintiff's pain medication was taken away does not reflect deliberate indifference in and of itself, it does support an inference that the Fresno County Jail was on notice that Plaintiff was under the care of a physician.

## C.  State Law Claims

### 1. First Cause of Action

Plaintiff's first cause of action is against the County for breach of its statutory duty of supervision and training. Plaintiff asserts that Defendant Penner breached her duty by:

> (a) negligently failing to enact procedures and policies guiding probation officers in the handling of minor violations of conditions of probation committed by DUI probationers with no history of violence; (b) failing to devote a reasonable and sufficient amount of time to train and supervise Alanis and other deputy probation officers so that Alanis and other deputy probation officers would employ a proper and measured response if and hen there is reason to belief that a DUI probationer with no history of violence has failed to file one or more monthly report forms and (c) failing to devote a reasonable and sufficient amount of time to train and supervise Alanis and other deputy probation officers to make them aware of the impropriety of arresting and detaining or causing the arrest and detention of such non-violent probationers based on such a belief in the absence of exigent circumstances.

(TAC at 9). Plaintiff's allegations assail the Probation Department's substantive policies concerning when arrests are appropriate; such allegations do not give rise to liability against the County. Plaintiff's allegations do not allege failure to train officers regarding the prerequisites to a lawful arrest, rather, Plaintiff alleges failure to train officers to exercise discretion not arrest probationers notwithstanding the existence of probable cause. As there is no statutory basis for liability based on failure to train probation officers not to effect arrests even when probable cause exists, Plaintiff's supervision and training claim must be dismissed.[4]  *See, e.g., Guzman v. County of Monterey*, 46

---

[4] Although the TAC is sufficient to allege that Plaintiff was arrested absent probable cause, without more, a single unlawful arrest does not provide sufficient factual basis to support a claim for failure to train and supervise.

Cal. 4th 887, 897 (Cal. 2009) (public entity liability must be predicated on statute).

The memorandum decision dismissing Plaintiff's second amended complaint provided the following analysis of Plaintiff's failure to train and supervise claim:

> Under [California's] Government Claims Act (Cal. Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute. *E.g., Guzman v. County of Monterey*, 46 Cal. 4th 887, 897 (Cal. 2009). Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty. Id. (citations omitted)...
>
> California courts construe the mandatory duty requirement strictly, "finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" *Id*. at 898 (citations omitted). Although [California Penal Code] section 1203.71 appears to impose an affirmative duty of supervision on the probation officer, it does not provide implementing guidelines.

As section 1203.71 does not provide implementing guidelines sufficient to establish a mandatory duty to train probation officers not to effect arrests where probable cause exists, Plaintiff's allegations do not state a claim for relief. Plaintiff has had numerous opportunities to allege a cognizable failure to train and supervise claim. Plaintiff's first cause of action is DISMISSED WITH PREJUDICE.

**2.   Second Cause of Action**

Plaintiff's second cause of action asserts a breach of the "statutory duty to maintain accurate records." Plaintiff contends

**14**

that "to the extent Alanis...looked in the files of Plaintiff and did not find the monthly reports which were required by law to be in the file, the Probation Department violated the terms of Penal Code 1202.10."

The memorandum decision dismissing Plaintiff's second amended complaint provided the following analysis of Plaintiff's records-based negligence claim:

> Plaintiff's contention that California Penal Code section 1203.10 imposes a mandatory duty to maintain monthly reports is dubious. *See Whitcombe v. County of Yolo*, 73 Cal. App. 3d 698, 707 (Cal. Ct. App. 1977) ("Next, we examine appellants' contention that Penal Code section[] 1203.10 impose[s] mandatory duties upon the county...We fault the argument inasmuch as we find *among other things* the proximate cause requirement of section 815.6 unsatisfied by the facts in this case.") (emphasis added). Section 1203.10 does not provide implementing guidelines for the preparation and maintenance of monthly reports. In fact, the plain language of section 1203.10 does not require the probation officer to prepare monthly reports at all...Cal. Penal Code § 1203.10.
>
> To the extent section 1203.10 gives rise to a mandatory duty to prepare and maintain the monthly progress reports at issue in this case, such duty is not "designed to protect against the risk of a particular kind of injury" Plaintiff complains of. In supervising a person on probation, and in compiling and keeping the required records, the probation department acts as an arm of the court. *County of Placer v. Superior Court*, 130 Cal. App. 4th 807, 814 (Cal. Ct. App. 2005) *accord McGuire v. Superior Court*, 12 Cal. App. 4th 1685, 1687 (Cal. Ct. App. 1993) ("the probation officer keeps the file both for his own benefit and for the benefit of the court"). The courts' role with respect to the records discussed in section 1203.10 is to review such records when exercising discretion to revoke, modify, or change the conditions of a person's probation. *See, e.g., People v. Segura*, 44 Cal. 4th 921, 932 (Cal. 2008). The applicable statutory framework does not suggest that records prepared pursuant to section 1203.10 are to be used by the court to protect probationers from imprudent arrests.

In opposition to the motion to dismiss, Plaintiff contends that the cases cited in the memorandum decision are "distinguishable and/or

1  inapposite."

2      As Plaintiff points out, *Whitcombe* did not expressly decide

3  whether section 1203.10 imposes mandatory record keeping duties on

4  probation departments because it found that Plaintiff could not

5  satisfy the proximate cause requirement of California Government

6  Code section 815.6.  73 Cal. App. 3d at 707.  However, *Whitcome*

7  provides that the proximate cause rationale was one of several

8  reasons plaintiff's attempt to predicate liability on section

9  1203.10, a theory that the Court held "lacks merit."  The short

10  shrift afforded to Plaintiff's theory of liability in *Whitcome*

11  strongly suggests that section 1203.10 does not give rise to

12  negligence liability.[5]

13      Plaintiff argues that *Bradford v. State,* 36 Cal. App. 3d 16,

14  21 (Cal. Ct. App. 1973) supports his theory of liability.  However,

15  in *Bradford*, the Court held that the statutes at issue were

16  "clearly designed to prevent the very type of harm which befell

17  plaintiff."  Here, not even Plaintiff contends that section 1203.10

18  is "clearly designed to prevent the very type of harm which befell"

19  him; rather, Plaintiff argues that section 1203.10 is intended "at

20  least in part to protect the probationer."  (Opposition at 14).

21  Plaintiff cites *Placer*, 130 Cal. App. 4th at 813, for the

22  proposition that section 1203.10 imposes on probation departments

23  "significant duties to the court and the probationer."  Plaintiff's

24

25  [5] Plaintiff avers that *Whitcombe* "makes no logical sense unless the court of
26  appeal assumed...a mandatory duty."  (Opposition at 4).  The fact that *Whitcombe*
   quickly and efficiently disposed of the plaintiff's claim based on an obvious
27  proximate cause deficiency– while noting that proximate cause was one of several
   flaws in the plaintiff's theory– does not suggest that the Court gave credence
28  to the notion that section 1203.10 creates a mandatory duty sufficient to
   establish liability.

citation to *Placer* is unavailing, as *Placer* does not suggest that the "duties to...the probationer" are designed to protect against the injury of which Plaintiff complains.   Rather, *Placer* makes clear that the purpose of section 1203.10 is to ensure that the court has a sufficient factual record to properly exercise its statutory parole authority.   *See id.*

It cannot be said that, in enacting section 1203.10, the Legislature imposed a mandatory duty on probation departments to maintain monthly progress reports in order to protect probationers from imprudent arrests.   Section 1203.10 does not require monthly progress reports at all; *a fortiori*, it does not set forth implementing guidelines for the maintenance of monthly progress reports.   Although keeping accurate records of a probationer's monthly reports does protect the probationer from being arrested for failing to file such reports, this protection is incidental to the underlying requirement that the probationer file the reports in the first instance.   Absent the requirement--imposed not by section 1203.10, but rather by the discretionary policies of probation departments--to file monthly progress reports, there would be no need to keep records of such reports in order to protect probationers from imprudent arrest.   Such incidental protection does not give rise to liability:

> That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6.

*Guzman*, 46 Cal. 4th 898.

Plaintiff requests that the court defer ruling on his claim under section 1203.10 in order to afford him time to conduct

**17**

further research and present legislative history concerning section 1203.10.  Additional time is not warranted, as Plaintiff was put on notice of the deficiencies of his claim in the court's memorandum decision issued on February 8, 2011.  (Doc. 21).  Plaintiff has had ample time to identify additional authorities to support his claim.  Further, affording Plaintiff additional time would be futile, as a court must strictly construe the mandatory duty requirement, "finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" *Id*.  Pleading must come to an end.

Plaintiff's second cause of action is DISMISSED WITH PREJUDICE.

### 3. Third Cause of Action

Plaintiff's third cause of action asserts the existence of a special relationship between Plaintiff and the probation department sufficient to give rise to a duty of care.  Plaintiff alleges that "under the totality of the circumstances it was outrageous and/or unreasonable, and a breach of the duty of care, to cause Plaintiff, with no record of violence, to be precipitously arrested and imprisoned."  Assuming *arguendo* that a special relationship existed between the Plaintiff and the Probation Department, existence of a special relationship, by itself, does not create liability; tort liability for governmental entities is based upon statute.  *E.g., Guerrero v. South Bay Union School Dist.*, 114 Cal. App. 4th 264, 269 (Cal. Ct. App. 2003).  The TAC does not clearly allege what statutory duty underlies Plaintiff's special relationship claim.  Plaintiff will be given one final opportunity to properly plead this claim.  This cause of action is DISMISSED WITHOUT PREJUDICE.

**18**

**4. Fourth Cause of Action**

The fourth cause of action asserts violation of California Civil Code section 52.1.  Section 52.1 provides in part:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...Any individual whose exercise or enjoyment of [*17] rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages

Cal. Civ. Code § 52.1.  The elements of a claim under section 52.1 are:

> (1) that the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) that the plaintiff reasonably believed that if she exercised her constitutional right, the defendant would commit violence against her or her property; that the defendant injured the plaintiff or her property to prevent her from exercising her right or retaliate against the plaintiff for having exercised her right; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm.

*See Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 882, 57 Cal. Rptr. 3d 454 (Cal. Ct. App. 2007)(citing CACI No. 3025).

The TAC sufficiently alleges that Plaintiff was arrested absent probable cause.  The act of placing an individual under arrest is inherently coercive, and where, as here, the arrest is not supported by probable cause, use of coercive physical force to deprive a person of their constitutional right to freedom from

1  incarceration is sufficient to provide the basis for a section 52.1

2  claim.  *See, e.g.*, *Wood v. Emmerson,* 155 Cal. App. 4th 1506, 1514,

3  66 Cal. Rptr. 3d 847 (Cal. Ct. App. 2007) (liability for false

4  arrest under California Civil Code section 52.1 turns on whether

5  arrest was violative of Fourth Amendment); *Warner v. County of San*

6  *Diego*, 2011 U.S. Dist. LEXIS 14312 * 15 (S.D. Cal. 2011). The

7  motion to dismiss the fourth cause of action is DENIED.

8         **5. Fifth Cause of Action**

9         Plaintiff's fifth cause of action alleges false arrest and

10 false imprisonment.  Under California law, whether a peace officer

11 is liable for the tort of false arrest depends on whether or not

12 probable cause existed.  *See, e.g., Salazar v. Upland Police Dept.*,

13 116 Cal. App. 4th 934, 947-48 (Cal. Ct. App. 2004) (cause of action

14 for false arrest foreclosed by existence of probable cause). The

15 TAC sufficiently alleges that Plaintiff was arrested absent

16 probable cause.  The motion to dismiss the fifth cause of action is

17 DENIED.

18        **6. Sixth Cause of Action**

19        Plaintiff's sixth cause of action asserts intentional

20 infliction of emotional distress.  To state a claim for intentional

21 infliction of emotional distress under California law, a claimant

22 must allege the following elements: (1) extreme or outrageous

23 conduct by the defendant with the intent to cause, or reckless

24 disregard for the probability of causing, emotional distress; (2)

25 suffering of severe emotional distress by the plaintiff; and (3)

26 the plaintiff's emotional distress is actually and proximately the

27 result of the defendant's outrageous conduct.  *E.g., Agarwal v.*

28 *Johnson*, 25 Cal. 3d 932, 946, (Cal. 1978), *overruled on other*

**20**

*grounds in White v. Ultramar*, 21 Cal. 4th 563, 574 n.4 (Cal. 1999). The TAC is sufficient to allege extreme conduct by Alanis that proximately caused Plaintiff to suffer severe emotional distress. Accepting the TAC as true, Alanis willfully caused Plaintiff to be arrested for an offense Alanis knew Plaintiff had not committed. Alanis is alleged to have ignored that Plaintiff's reports were current and to have acted with conscious disregard to implied harm to Plaintiff.  The motion to dismiss the sixth cause of action is DENIED.

**7. Seventh Cause of Action**

Plaintiff contends that Alanis owed him a duty of care based on the existence of a special relationship.  Under California law, whether a special relationship exists is determined by examining six factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm.  *E.g., Cabanas v. Gloodt Associates*, 942 F.Supp. 1295, 1308-1309 (E.D. Cal.1996), aff'd, 141 F.3d 1174 (9th Cir.1998). The TAC is sufficient to allege a special relationship between probation officer and probationer.  As the TAC alleges Plaintiff was arrested absent probable cause, the TAC sufficiently alleges a negligence claim against Alanis.  *See Bulkley v. Klein*, 206 Cal. App. 2d 742, 751 (Cal. Ct. App. 1962) (noting that probable cause inquiry is essentially coextensive with negligence inquiry).  The motion to dismiss the seventh cause of action is DENIED.

**21**

8. **Eleventh Cause of Action**

Plaintiff's eleventh cause of action asserts failure to provide medical care under California Government Code section 845.6.   California Government Code section 845.6 provides in pertinent part:

> a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov. Code § 845.6.  The TAC alleges that jail officials were on notice of facts which gave them reason to know that Plaintiff was in need of immediate medical care in the form of his prescription heart medication.   The TAC also alleges that jail personnel failed to take reasonable action to summon the medical care required by Plaintiff, and that the formal medical grievance Plaintiff filed with jail staff was ignored until Plaintiff's condition deteriorated so far that his cellmate had to flag down a nurse.  The TAC states a claim under section 845.6.

Defendants persist in asserting arguments previously disposed of in the memorandum decision regarding Plaintiff's second amended complaint.  Defendants' meritless arguments are no more persuasive now then they were at that time.  Defendants citations to *Lawson,* *White*, and *Watson* remain unavailing.   The court previously dispatched these cases as follows:

> Defendants cite *Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1375, 1385 (Cal. Ct. App. 2010) for the proposition that "under California precedent, even if Plaintiff was denied his prescription medications, said denial, does not amount to neglect of a serious medical condition."  (Motion to Dismiss at 16).   *Lawson* is inapposite.  *Lawson* concerned depravation of a pregnant

**22**

prisoner's unidentified pregnancy medications and a breast pump. *Lawson* did not hold that deprivation of prescription medications is never sufficient to establish liability under section 845.6 as a matter of law. Rather, in *Lawson*, the trial court concluded that denial of medications and a breast pump did not amount to neglect of a serious and obvious medical condition. 180 Cal. App. 4th at 1385. Here, the facts alleged in the SAC are sufficient to find that Alanis knew Plaintiff needed daily doses of prescription heart medications. Plaintiff's need for heart medication is not analogous to a pregnant women's need for a breast pump and unspecified pregnancy medications.

Defendants also cite *White v. Superior Court*, 225 Cal. App. 3d 1505, 1509 (1990) in support of the contention that "[f]ailure of a medical practitioner to prescribe or provide necessary medications or treatment to one he is summoned to assist cannot, within the plain meaning of the statutory language, constitute failure to summon medical care." (Motion to Dismiss at 16). *White* is not applicable to Plaintiff's allegations. Plaintiff's claim under section 845.6 is based on his allegation that medical care was not timely summoned, and that as a result, he was deprived of his medication. Plaintiff does not allege that medical practitioner was summoned to provide care, but then failed to prescribe or provide the proper medication.

Finally, Defendants cite *Watson v. State of California*, 21 Cal. App. 4th 836, 842 (Cal. Ct. App. 1993) and *Nelson v. State of California*, 139 Cal. App. 3d 72, 78-9 (Cal. Ct. App. 1982) in support of the argument that section 845.6 contains a distinction between a public entity employee who is "lawfully engaged in the practice of the healing arts" and an employee who is not...Defendant COUNTY cannot be vicariously liable for any alleged medical malpractice of its employees. (Motion to Dismiss at 16-17).

Defendants' attempt to conflate Plaintiff's cause of action under section 845.6 (fourteenth cause of action) with Plaintiff's separate claim for medical malpractice (sixteenth cause of action) is unavailing. As Defendants' own authorities recognize, a claim for medical malpractice is distinct from a claim under section 845.6. *See id*. Section 845.6 expressly provides that "a public employee, *and the public entity* where the employee is acting within the scope of his employment, is liable" for violations of section 845.6. Cal. Gov. Code § 845.6 (emphasis added).

(Doc. 21 at 21-22). The TAC sufficiently alleges a claim under California Government Code section 845.6. The motion to dismiss

the eleventh cause of action is DENIED.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Plaintiff's medical care claim under Section 1983 (thirteenth cause of action) against Defendant Alanis is DISMISSED WITHOUT PREJUDICE;

2) Plaintiff's first cause of action is DISMISSED WITH PREJUDICE;

3) Plaintiff's second cause of action is DISMISSED WITH PREJUDICE;

4) Plaintiff's third cause of action is DISMISSED WITHOUT PREJUDICE;

5) Plaintiff shall file an amended complaint within fourteen (14) days of electronic service of this Memorandum Decision; Defendants shall file a response within ten (10) days of service of the amended complaint, and

6) Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days of electronic service of this decision.

IT IS SO ORDERED.

**Dated:    May 5, 2011**          _____ **/s/ Oliver W. Wanger** _____
                                   UNITED STATES DISTRICT JUDGE