IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LORAN QUINN, | Case No. 1:10-cv-01617 LJO BAM |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | (Doc. 68) |
| FRESNO COUNTY SHERIFF, et al., | |
| Defendants. | |
| _____/ | |

This civil rights action arises from Plaintiff James Loran Quinn's ("Plaintiff's") alleged false arrest for an erroneous probation violation and from allegations of deficient medical care for a heart complication Plaintiff suffered while in custody.  Currently pending before the Court is the motion for summary judgment filed by Defendants County of Fresno ("the County") and Probation Officer David Alanis ("Officer Alanis") (collectively "Defendants").  Plaintiff has filed an opposition to the motion, and Defendants have filed a reply.  Upon careful consideration of the parties' submissions, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment.

I.    BACKGROUND

A.    Plaintiff's Probation History

On September 5, 2005, Plaintiff pled guilty to driving under the influence and was sentenced to five years of probation.  The terms of Plaintiff's probation required him to file monthly report forms ("MRFs") with the Probation Department between the first and fifth of each month.  For the first two

1

1  years of his probation, Plaintiff filed his MRFs sporadically.  In August 2006, Plaintiff was fined for

2  failing to file his MRFs on time, and in October 2006, Officer Alanis was assigned as Plaintiff's new

3  supervising probation officer.

4       **B.**     **Plaintiff's Arrest**

5       On February 12, 2007, Police Detective Mark Van Wyhe ("Detective Van Whye") approached

6  Plaintiff outside Plaintiff's office and stated that Plaintiff was in violation of his probation for failing

7  to file his MRFs.  In response, Plaintiff asserted that he had confirmed copies of his MRFs in his office

8  and could locate them if given a chance.  Detective Van Whye elected to call Officer Alanis instead to

9  verify Plaintiff's probation status.

10      Officer Alanis asserts that he attempted to confirm Plaintiff's probation standing through two

11  avenues.  First, Officer Alanis reviewed the Adult Probation System ("APS"), a database that contains

12  scanned copies of court orders, chronological reports generated by the County Probation Department

13  ("chronos"), and MRFs filed by probationers.  Next, Officer Alanis reviewed Plaintiff's hard copy file.

14  Officer Alanis maintains that after reviewing these sources, he was unable to locate Plaintiff's MRFs

15  for the months of December 2006, January 2007, and February 2007.  Officer Alanis concluded that

16  Plaintiff was not in good standing with the terms of his probation and instructed Detective Van Whye

17  to arrest Plaintiff.

18      Plaintiff was arrested and taken to Fresno County Jail.  There, Officer Alanis took custody of

19  Plaintiff and initiated the booking process.  Plaintiff reiterated that he had date-stamped copies of his

20  MRFs at his office, which would prove that he had timely filed them.  Officer Alanis responded that

21  there was nothing presently in front of him, in the APS, or in Plaintiff's hard copy file demonstrating

22  that Plaintiff filed MRFs for the months of December 2006, January 2007, and February 2007.  Officer

23  Alanis asserted that to the extent that Plaintiff had proof showing otherwise, he could raise the issue

24  when he appeared before a judge.

25      Later that day, Plaintiff called his then-wife, Deborah Quinn ("Ms. Quinn"), and informed her

26  that he had been arrested for failing to file his MRFs.  Plaintiff explained that he had proof in his office

27  that he had timely filed his MRFs.  Ms. Quinn located the documents and called Officer Alanis.  Ms.

28  Quinn asserts that she informed Officer Alanis that she had in her possession the MRFs that allegedly

1   were missing and offered to bring them to him.  Officer Alanis purportedly declined the offer and stated

2   that Plaintiff had no rights and could be arrested for any reason at any time.

3            **C.      Plaintiff's Medical Treatment**

4            Plaintiff has a history of coronary artery disease and chronic back pain.  Plaintiff takes various

5   prescription medications as treatment, which at the time of his arrest included Norco, Xanax, Lipitor,

6   Lovastatin, and Trazodone.

7            Upon his arrest on February 12, 2007, Plaintiff informed Officer Alanis that he was currently

8   taking prescription medication.  Shortly thereafter, Plaintiff was examined by Nurse Rost of the Fresno

9   County Department of Public Health, Correctional Health Services ("FCHS"), as part of the booking

10  process.  Nurse Rost observed Plaintiff and recorded his vital signs, past and current medical history,

11  and current prescription medications.  Nurse Rost also asked Plaintiff to complete a medical disclosure

12  form, which authorized FCHS medical staff access to Plaintiff's confidential health information.  The

13  completed form was then faxed to Kaiser Hospital to confirm Plaintiff's medical history and to verify

14  his prescription medications, as required by jail policy.

15           Late that evening, Plaintiff submitted an inmate medical request form seeking Norco as pain

16  relief.  Early the next morning, on February 13, 2007, Plaintiff was seen by FCHS Nurse Figueroa and

17  FCHS Doctor Ruvalcaba.  Plaintiff complained of chest pain and requested Norco and Xanax.  Nurse

18  Figueroa responded by examining Plaintiff's vital signs and by treating Plaintiff's symptoms with two

19  0.4 mg tablets of nitroglycerin.  Within about five minutes of taking the tablets, Plaintiff's chest pain

20  appeared to have been resolved.  Therefore, Nurse Figueroa discharged Plaintiff with additional tablets

21  of nitroglycerin, which could be taken as needed.  Plaintiff, however, was not satisfied with this course

22  of treatment.  Plaintiff filed an inmate grievance form later that morning complaining that nitroglycerin

23  does not address his heart condition, which according to Plaintiff consisted of congestive heart failure

24  and an irregular heartbeat.

25           In the early hours of the next day, on February 14, 2007, an inmate noticed that Plaintiff was in

26  physical distress and summoned an officer.  The officer escorted Plaintiff to the jail's medical clinic.

27  There, Plaintiff informed Nurse Figueroa that he had chest pain which radiated down his left arm and

28  that the nitroglycerin tablets did not alleviate this pain.  Nurse Figueroa contacted Doctor Ruvalcaba,

who in turn instructed that an electrocardiogram ("EKG") be taken.  Plaintiff's EKG results revealed minor abnormalities with Plaintiff's heartbeat.  Due to the limited diagnostic tools available at the jail, Doctor Ruvalcaba ordered that Plaintiff be transferred to, and monitored at, a hospital.  Plaintiff was transferred to University Medical Center Hospital soon thereafter.

Throughout this time, Plaintiff's associate, Wayde Mangiarelli, and Plaintiff's attorney, Mark King, attempted to notify probation officials of Plaintiff's history of coronary artery disease and need for prescription medication.  In the evening of February 12, 2007, Mr. Mangiarelli attempted to deliver Plaintiff's prescription medication to the jail.  However, pursuant to jail policy, medications were not accepted from the public on behalf of an inmate absent an emergency.  The general jail policy required that prescription medication be ordered from the authorized pharmacy and could only be distributed by FCHS medical staff.  Mr. King was also unsuccessful in his attempts.  On February 13, 2007, Mr. King informed several probation officials of Plaintiff's condition, including Officer Alanis and Probation Services Manger Emilio Valle, to no avail.

### D.    The Instant Action

Plaintiff filed suit in Fresno County Superior Court contesting his arrest and medical treatment in jail.  The action was then removed to this Court on September 7, 2010.  After a series of motions to dismiss, the action is now proceeding on Plaintiff's third amended complaint on the following claims: (1) violation of California Civil Code section 52.1 against Officer Alanis (fourth cause of action); (2) false imprisonment under California law against Officer Alanis (fifth cause of action); (3) intentional infliction of emotional distress against Officer Alanis (sixth cause of action); (4) negligence against Officer Alanis (seventh cause of action); (5) *respondeat superior* under California Government Code section 815.2(a) (ninth cause of action); (6) false arrest under 42 U.S.C. § 1983 against Officer Alanis (tenth cause of action); (7) violation of California Government Code section 845.6 against the County (eleventh cause of action); and (8) municipal liability under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978) against the County (twelfth cause of action).

On April 16, 2012, Defendants filed the instant motion for summary judgment.  Defendants move for summary judgment on all of Plaintiff's outstanding claims.  Plaintiff filed an opposition to the motion on May 9, 2012 and May 10, 2012, and Defendants filed a reply on May 16, 2012.  On May 17,

4

1 2012, the Court found this matter to be suitable for decision without oral argument and took the matter

2 under submission pursuant to Local Rule 230(g).

3 **II.    LEGAL STANDARD**

4      Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

5 and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

6 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one which

7 may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

8 A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor

9 of the nonmoving party. Id.

10      A party seeking summary judgment "always bears the initial responsibility of informing the

11 district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

12 answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

13 demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

14 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an

15 issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

16 the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue

17 as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

18 by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing

19 Celotex, 477 U.S. at 323).

20      If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

21 material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v.

22 Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). The nonmoving party must

23 go beyond the allegations set forth in its pleadings. See Fed. R. Civ. P. 56(c). "[B]ald assertions or a

24 mere scintilla of evidence" will not suffice. Stefanchik, 559 F.3d at 929. Indeed, the mere presence of

25 "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary

26 judgment. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where

27 the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

28 is no genuine issue for trial." Id. at 587.

1   In resolving a summary judgment motion, "the court does not make credibility determinations

2   or weigh conflicting evidence." Soremekun, 509 F.3d at 984.  That remains the province of the jury.

3   See Anderson, 477 U.S. at 255.  Instead, "[t]he evidence of the [nonmoving party] is to be believed, and

4   all justifiable inferences are to be drawn in [its] favor." Id.  Inferences, however, are not drawn out of

5   the air; the nonmoving party must provide a factual predicate from which the inference may justifiably

6   be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

7   810 F.2d 898, 902 (9th Cir. 1987).

8   **III.     DISCUSSION**

9        **A.     Preliminary Matters**

10            **1.     Untimeliness of Plaintiff's Opposition**

11   As a preliminary matter, Defendants take issue with the untimeliness of Plaintiff's opposition.

12   According to the Court's order filed May 7, 2012, Plaintiff was to file his opposition by no later than

13   May 9, 2012.  Plaintiff, however, evidently waited until the eleventh hour to begin his filing on May 9,

14   2012, and as a result, portions of Plaintiff's opposition were not filed until the early hours of May 10,

15   2012. (Docs. 84-92.)  Plaintiff also filed a belated table of authorities later that day. (Doc. 93.)  There

16   appears to be no prejudice to Defendants from Plaintiff's late filing, and therefore the Court will not

17   strike any portion of Plaintiff's opposition.  Nevertheless, Plaintiff's counsel is ADMONISHED for his

18   loose attitude toward already extended deadlines, particularly for failing to seek leave of court after it

19   became clear that all of counsel's submissions were not timely filed.

20            **2.     Adherence to Local Rule 260(b)**

21   Defendants also protest that Plaintiff's opposition does not fully adhere to Local Rule 260(b).

22   Local Rule 260(b) provides in part:

23        Any party opposing a motion for summary judgment or summary adjudication shall
          reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts
24        that are undisputed and deny those that are disputed, including with each denial a citation
          to the particular portions of any pleading . . . or [evidence] relied upon in support of that
25        denial.  The opposing party may also file a concise "Statement of Disputed Facts," and
          the source thereof in the record, of all additional material facts as to which there is a
26        genuine issue precluding summary judgment or adjudication.

27   Here, Plaintiff has reproduced the facts in Defendants' Statement of Undisputed Facts and has denied

28   the facts that are disputed with citations to supporting evidence.  However, Plaintiff's memorandum of

points and authorities refers to *additional* evidence not included in Plaintiff's response to Defendants'

Statement of Undisputed Facts or in a separate Statement of Disputed Facts.  The Court concludes that

Plaintiff's opposition substantially complies with Local Rule 260(b) and therefore declines Defendants'

invitation to simply disregard Plaintiff's evidence to the extent that it is not listed in Plaintiff's response

to Defendants' Statement of Undisputed Facts.  At the same time, the Court will not scour Plaintiff's

evidence in search of disputed facts.

### 3.    Evidentiary Objections

Lastly, the parties have lodged numerous evidentiary objections.  The Court finds it necessary

to specifically address a few of the authentication challenges raised by Defendants, and does so below.

As to all other objections to evidence on which the Court relies, the Court has carefully considered each

objection and has sustained those that held merit.  Unless otherwise noted, this Court does not rule on

general evidentiary matters individually in the summary judgment context.

### a.    Depositions of Plaintiff and Officer Alanis

Plaintiff includes in his opposition various excerpts from the deposition testimony of Plaintiff

and Officer Alanis.  Defendants argue that these excerpts are not properly authenticated.  Defendants

highlight that Plaintiff has failed to attach the reporter's certification to all the deposition excepts that

Plaintiff submitted.

"[U]nauthenticated documents cannot be considered in a motion for summary judgment."  Orr

v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted).  A deposition or an excerpt

therefrom is authenticated for summary judgment purposes if it: (1) identifies all of the names of the

deponent; (2) identifies the action; and (3) includes the reporter's certification that the deposition is a

true record of the deponent's testimony.  Id. at 774.  "Ordinarily, this would have to be accomplished

by attaching the cover page of the deposition and the reporter's certification to every deposition extract

submitted."  Id.  Once deposition testimony is authenticated by a party, the authenticity requirement for

that testimony is satisfied as to all parties.  Id. at 776.

Plaintiff undoubtedly failed to attach the reporters' certifications verifying the genuineness of

the deposition excerpts Plaintiff submitted.  However, the majority of Plaintiff's excerpts overlap with

the deposition excerpts Defendants provide, which have been properly authenticated.  The genuineness

1  of those excerpts are therefore established.  As to those portions that do not overlap, a review of the

2  complete deposition transcripts of Plaintiff and Officer Alanis (which Defendants also provide) shows

3  that Plaintiff's excerpts are true.  Accordingly, Defendants' objections to Plaintiff's excerpts from the

4  depositions of Plaintiff and Officer Alanis on the basis of authenticity are OVERRULED.

5               **b.    Plaintiff's MRFs**

6         Plaintiff includes in his opposition copies of his filed MRFs for the months of December 2006,

7  January 2007, and February 2007.  Defendants argue in cursory fashion that these documents are not

8  properly authenticated and lack foundation.  Defendants' argument lacks merit.  Plaintiff has properly

9  authenticated and laid a foundation for these documents in his attached affidavit.  See Orr, 285 F.3d at

10  773-74 ("In a summary judgment motion, documents authenticated through personal knowledge must

11  be attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be

12  a person through whom the exhibits could be admitted into evidence.") (internal quotation marks and

13  citation omitted).  Accordingly, Defendants' objections to Plaintiff's MRFs on the basis of authenticity

14  and foundation are OVERRULED.

15          **B.    Claims Regarding Plaintiff's Arrest**

16         The Court now turns to the merits of Defendants' motion for summary judgment.  Defendants

17  move for summary judgment on all of Plaintiff's claims relating to his arrest.  These include: (1) false

18  arrest under § 1983; (2) false imprisonment under California tort law; (3) violation of California Civil

19  Code section 52.1; (4) intentional infliction of emotional distress; (5) negligence; and (6) *respondeat*

20  *superior* pursuant to California Government Code section 815.2(a).

21             **1.    False Arrest Under § 1983 (Tenth Cause of Action)**

22         The Fourth Amendment requires that an arrest be supported by probable cause.  See Atwater v.

23  City of Lago Vista, 532 U.S. 318, 354 (2001).  Probable cause exists when officers have knowledge or

24  reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an

25  offense has been committed by the person being arrested.  United States v. Lopez, 482 F.3d 1067, 1072

26  (9th Cir. 2007) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Probable cause is an objective standard

27  taking into account the totality of the circumstances known to the arresting officer at the time of the

28  arrest.  Id.; Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).  While conclusive evidence

8

1  of guilt is not necessary to establish probable cause, "[m]ere suspicion, common rumor, or even strong

2  reason to suspect are not enough[.]"  McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984) (citing

3  Henry v. United States, 361 U.S. 98, 101 (1959)).

4        The question presented in this case is whether Officer Alanis had probable cause to believe that

5  Plaintiff failed to file his MRFs, which were required as a condition of Plaintiff's probation.  See Cal.

6  Penal Code § 1203.2(a) (a peace officer may rearrest a probationer if the officer has probable cause to

7  believe that the probationer is violating a condition of probation).  To show that probable cause existed,

8  Officer Alanis relies on his testimony that he reviewed the APS and Plaintiff's hard copy file but could

9  not locate three MRFs.  Officer Alanis also asserts that he had no reason to doubt the accuracy of either

10 the APS or Plaintiff's hard copy file.  To show that probable cause did not exist, Plaintiff testifies, and

11 presents date-stamped copies of his MRFs as supporting evidence, that he did in fact file the documents

12 at issue in this case.

13       Viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of fact

14 precluding summary judgment.  Plaintiff has established that he filed MRFs for the months in dispute.

15 Therefore, a reasonable inference can be drawn that the APS and Plaintiff's hard copy file actually did

16 contain copies of Plaintiff's MRFs.  This inference is rooted in the same reasoning that Officer Alanis

17 puts forward in arguing that it was reasonable for him to rely on these sources to determine Plaintiff's

18 probation status in the first place: the APS and a probationer's hard copy file are generally accurate in

19 recording whether a probationer has filed an MRF.

20       As a result, two competing inferences emerge.  One inference is that Officer Alanis was intent

21 on arresting Plaintiff and did not review the APS or Plaintiff's hard copy file as he now claims.  This

22 inference is further supported, at least to some degree, by Officer Alanis' alleged categorical refusal to

23 examine Plaintiff's date-stamped MRFs on two occasions, at the time of Plaintiff's arrest and when Ms.

24 Quinn offered to bring the documents to him later that day.  If this were the case, Officer Alanis did not

25 have probable cause to arrest Plaintiff.  In the alternative, an inference can be drawn that there was

26 simply  an error in recording Plaintiff's MRFs in the APS and Plaintiff's hard copy file.  This is the

27 scenario advanced by Officer Alanis.  If this were the case, Officer Alanis had probable cause to arrest

28 Plaintiff, assuming that he had no reason to strongly suspect such errors.

1   On a motion for summary judgment, the Court must draw the inference that is most favorable

2   to the non-moving party, here Plaintiff.  See Anderson, 477 U.S. at 255.  As such, the Court concludes

3   that genuine disputes of fact exist as to: (1) the contents of the APS and Plaintiff's probation file; (2)

4   whether Officer Alanis reviewed the sources he claims he reviewed; and ultimately (3) whether Officer

5   Alanis had probable cause to arrest Plaintiff.

6   This conclusion not only precludes summary judgment on this claim, but it also precludes any

7   determination of qualified immunity.  The doctrine of qualified immunity shields public officials from

8   liability for civil damages, so long as their conduct does not violate clearly established constitutional

9   rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Determining whether an official is entitled to

10   qualified immunity entails a two-pronged analysis: (1) whether the facts as alleged show the official's

11   conduct violated a constitutional right; and (2) whether it would be sufficiently clear to a reasonable

12   official that his conduct was unconstitutional in the situation he confronted.  See Saucier v. Katz, 533

13   U.S. 194, 201-02 (2001).  A court cannot undertake this analysis where, as here, historical facts material

14   to the qualified immunity analysis are in dispute.  See Torres v. City of Los Angeles, 548 F.3d 1197,

15   1210-11 (9th Cir. 2008).  If in fact Officer Alanis did not examine the APS or Plaintiff's hard copy file

16   as he now claims, Officer Alanis would not have had a reasonable basis for believing that Plaintiff's

17   arrest was constitutional.  The Court, however, cannot make that factual determination; the issue must

18   be decided by a jury.  Id. at 1210.  Accordingly, Defendants' motion for summary judgment is DENIED

19   with respect to this claim.

20   **2.      False Imprisonment (Fifth Cause of Action)**

21   Under California law, false imprisonment is the "unlawful violation of the personal liberty of

22   another."  Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Asgari v. City

23   of Los Angeles, 15 Cal. 4th 744, 757 (Ct. App. 1997)).  The elements of a claim for false imprisonment

24   are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3)

25   for an appreciable period of time, however brief."  Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485,

26   496 (Ct. App. 2000).

27   Officer Alanis argues that he is entitled to summary judgment on this claim for three reasons.

28   First, Officer Alanis reiterates that he had probable cause to arrest Plaintiff, and therefore Plaintiff's

10

1  arrest was lawful.  Second, Officer Alanis maintains that he is entitled to immunity under California

2  Penal Code section 847(b)(1), which shields peace officers from civil liability if the peace officer had

3  reasonable cause to believe the arrest was lawful.  Third, Officer Alanis contends that he is entitled to

4  immunity under California Government Code section 845.8(a), which shields public employees from

5  civil liability for injuries caused by a decision to revoke an individual's parole or probation.  Because

6  the Court has already determined that genuine disputes of fact exist as to whether Officer Alanis had

7  probable cause or had reason to believe that he had probable cause to arrest Plaintiff, Officer Alanis is

8  not entitled to summary judgment for the first two reasons that he argues.  This, then, leaves the third

9  reason: immunity under section 845.8(a).

10       The California Supreme Court considered the scope of immunity under section 845.8(a) most

11  recently in Perez-Torres v. State of California, 42 Cal. 4th 136 (2007).  In Perez-Torres, a detainee filed

12  an action for false imprisonment and negligence against several parole agents after he was mistakenly

13  taken into custody for a parole violation and confined for 25 days.  The detainee repeatedly asserted to

14  the parole agents that they had the wrong man.  Id. at 139.  Eventually, one parole agent realized that

15  there was a disparity between the detainee's height and the true parolee's alleged height.  Id. at 139-40.

16  The parole agent took a picture of the detainee and called the federal Immigration and Naturalization

17  Service to express doubt about the detainee's identity.  Id. at 140.  The parole agent was erroneously

18  assured that the detainee was the true parolee.  Id.  Thereafter, the parole agents decided that it was no

19  longer necessary to verify the detainee's identity through his fingerprints.  Id.  The California Supreme

20  Court concluded from these facts that the parole agents were entitled to immunity under section 845.8(a)

21  for their initial, mistaken decision to arrest the detainee but were not immune for their decision to keep

22  the detainee in custody after the parole agents "knew or should have known" that the detainee was not

23  the true parolee.  Id. at 145.

24       This Court cannot discern a meaningful distinction between the continued detention for which

25  the parole agents could be held liable for in Perez-Torres and the arrest at issue in this case.  Here, there

26  is disputed factual evidence that Officer Alanis knew or should have known that Plaintiff was not subject

27  to arrest for a probation violation at the *inception* of the arrest.  Thus, Perez-Torres suggests that at the

28  inception of Plaintiff's arrest, Officer Alanis lost any immunity afforded by section 845.8(a).  Officer

1  Alanis has not provided any authority holding otherwise.  Accordingly, the Court concludes that Officer

2  Alanis is not entitled to immunity under section 845.8(a) at this time and DENIES Defendants' motion

3  for summary judgment with respect to this claim.

4          **3.**        **Section 52.1 (Fourth Cause of Action)**

5          California Civil Code section 52.1 provides that an individual may seek civil damages against

6  any person who interferes with his constitutional rights through threats, intimidation, or coercion.  See

7  Cal. Civil Code 52.1(b).  Placing an individual under arrest is inherently coercive, and therefore where

8  an arrest is not supported by probable cause, it may give rise to liability under section 52.1.  See, e.g.,

9  Wood v. Emmerson, 155 Cal. App. 4th 1506, 1514-15 (Ct. App. 2007) (liability for false arrest under

10  section 52.1 turns on whether the arrest violated the Fourth Amendment); Gillan v. City of San Marino,

11  147 Cal. App. 4th 1033 (Ct. App. 2007) (allowing the plaintiff to recover under section 52.1 where his

12  arrest was not supported by probable cause ).

13          Officer Alanis contends that he is entitled to summary judgment on this claim because he had

14  probable cause to arrest Plaintiff and because he is entitled to immunity under California Government

15  Code section 821.6.  Again, the Court has already determined that there are genuine disputes of fact as

16  to whether Officer Alanis had probable cause to arrest Plaintiff.  Therefore, the Court focuses only on

17  whether Officer Alanis is entitled to immunity under section 821.6.

18          Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting

19  or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he

20  acts maliciously and without probable cause."  The immunity protects not only the act of instituting a

21  judicial or administrative proceeding, it also shields actions taken in the course of an investigation into

22  the alleged wrongdoing.  See All Angels Preschool/Daycare v. County of Merced, 197 Cal. App. 4th

23  394, 407-08 (Ct. App. 2011).  There is an important exception, however.  The California Supreme Court

24  has held that section 821.6 was not intended to alter the common law rule that public officials may be

25  held liable for false arrest or false imprisonment.  Sullivan v. County of Los Angeles, 12 Cal. 3d 710,

26  719-22 (1974).  Therefore, where a claim is grounded in allegations that an arrest was made without

27  probable cause, section 821.6 does not afford the offending public officials immunity.  See Gillan, 147

28  Cal. App. 4th at 1050-51.

1    The California Court of Appeal's decision in Gillan is illustrative.  In that case, the coach of a

2    high school girls' basketball team was accused of sexual harassment by one of the girls on the team.  Id.

3    at 1038.  After interviewing the accuser and recording various conversations between the accuser and

4    the coach, police officers decided to detain the coach, obtain his fingerprints and photograph, and issue

5    a press release regarding the accusations in the hope of discovering additional victims.  Id. at 1039-40.

6    Further investigation, however, revealed no significant corroborating evidence of sexual harassment,

7    and therefore the district attorney declined to prosecute the case.  Id. at 1040.  The coach subsequently

8    filed suit in state court for violation of section 52.1, defamation, and intentional infliction of emotional

9    distress.  Id. at 1040-41.

10    The coach prevailed at trial.  On appeal, one issue raised was whether the police officers were

11    entitled to immunity under section 821.6.  The California Court of Appeal concluded that the police

12    officers could not be held liable for defamation and intentional infliction of emotional distress because

13    the press release was issued in furtherance of the officers' investigation and therefore was protected by

14    section 826.1.  Id. at 1050.  As to the claim under section 52.1, however, the court concluded that the

15    police officers were not entitled to immunity because that claim was based on an arrest made without

16    probable cause and section 826.1 affords officers no immunity under those circumstances.  Id. (citing

17    Sullivan, 12 Cal. 3d at 719-22).

18    Returning to the case at hand, Plaintiff's section 52.1 claim, like the coach's claim in Gillan, is

19    firmly rooted in the allegation that he was arrested without probable cause.  As such, Officer Alanis is

20    not entitled to immunity under section 826.1.  Defendants' motion for summary judgment is DENIED

21    with respect to this claim.

22              **4.      Intentional Infliction of Emotional Distress (Sixth Cause of Action)**

23    Under California law, "[a] cause of action for intentional infliction of emotional distress exists

24    when there is (1) extreme and outrageous conduct by the defendant with the intention of causing . . .

25    emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

26    proximate causation of the emotional distress by the defendant's outrageous conduct."  Hughes v. Pair,

27    46 Cal. 4th 1035, 1050 (2009).  Officer Alanis argues that he is entitled to summary judgment on this

28    claim for the same reasons that he is entitled to summary judgment on Plaintiff's claim under section

52.1: he had probable cause to arrest Plaintiff and he is entitled to immunity under section 821.6.  The Court disagrees for the reasons previously discussed.  Accordingly, Defendants' motion for summary judgment is DENIED with respect to this claim.

### 5.	Negligence (Seventh Cause of Action)

Under California law, a claim for negligence is composed of four basic elements: (1) existence of a duty to exercise care; (2) breach of that duty; (3) causation; and (4) damages.  Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003); see Saelzler v. Advanced Group 400, 25 Cal. 4th 763, 767 (2001).  Officer Alanis reiterates that he is entitled to summary judgment on this claim because he reasonably believed that there was probable cause to arrest Plaintiff and he is entitled to immunity under section 821.6.  Again, the Court disagrees for all the reasons previously discussed.  Accordingly, Defendants' motion for summary judgment is DENIED with respect to this claim.

### 6.	*Respondeat Superior* (Ninth Cause of Action)

Under California law, a county is liable under the doctrine of *respondeat superior* for acts or omissions of its employees that proximately cause an injury.  Cal. Gov. Code § 815.2(a).  A county is immune from liability only where its employees would also be immune.  Cal. Gov. Code § 815.2(b); Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc).  Because Officer Alanis is not necessarily immune from Plaintiff's state law claims relating to his arrest, the County may still be held liable for these torts under a theory of *respondeat superior*.  Accordingly, the County's motion for summary judgment is DENIED with respect to this claim.

### C.	Claims Regarding Plaintiff's Medical Care

Defendants also move for summary judgment on Plaintiff's claims relating to the medical care he received (or did not receive) while in jail.  Plaintiff presents two claims in this regard: (1) a claim against the County under California Government Code section 845.6; and (2) a Monell claim against the County under § 1983.

### 1.	Section 845.6 (Eleventh Cause of Action)

Section 845.6 provides that a public entity is liable where one of its employees, acting within the scope of his employment, "knows or has reason to know that [a] prisoner is in need of immediate medical care and he fails to take reasonable action to summon such care."  Cal. Gov. Code § 845.6.  A

14

1   plaintiff must therefore prove three elements to prevail under section 845.6: "(1) [a] public employee

2   knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably

3   summon such care." Jett v. Penner, 439 F.3d 1091, 1099 (9th Cir. 2006). See also Watson v. State of

4   California, 21 Cal. App. 4th 836, 841-42 (Ct. App. 1993).

5       In moving for summary judgment on this claim, the County asserts that its employees did not

6   know or have reason to know that Plaintiff was in need of immediate medical attention.  The County

7   notes that Officer Alanis only observed Plaintiff during the booking process on February 12, 2007, and

8   that at that time, Plaintiff did not exhibit any obvious signs that he was in need of immediate medical

9   care.  The County argues that while Plaintiff informed Officer Alanis that he was taking prescription

10  medication, a person's need for medication generally does not require urgent action.  Furthermore, the

11  County notes that in any event, Plaintiff was screened and examined by Nurse Rost soon thereafter as

12  part of the booking process.

13      Plaintiff counters that Officer Alanis knew or had reason to know that Plaintiff was in need of

14  immediate medical attention for his heart on the day *after* Plaintiff was booked.  As support, Plaintiff

15  refers to the declaration of his attorney, Mr. King, who asserts that on February 13, 2007, he contacted

16  and informed Officer Alanis that Plaintiff believed he had suffered a "cardiac episode" while in jail

17  because he did not have access to his prescription medications.  (Doc. 87, Decl. of Mark King, ¶ 6.[1])

18  Plaintiff argues that despite this information, Officer Alanis did not take any action, let alone summon

19  medical care on Plaintiff's behalf.

20      Plaintiff also provides evidence that other county employees knew or had reason to know that

21  Plaintiff was in need of immediate medical attention.  In his declaration, Mr. King asserts that after he

22  contacted Officer Alanis, he spoke with Lieutenant Rinehart and Probation Services Manger Emilio

23  Valle at the Probation Department regarding Plaintiff's condition.  (Id. ¶¶ 8, 10.)  Mr. King also asserts

24  that he informed Sergeant McGill, the jailor in charge of the floor where Plaintiff was being held, that

25  _____

26      [1] Defendants object to many portions of Mr. King's declaration.  Defendants argue that Mr. King's conversations
    with various officials constitute hearsay.  This objection is OVERRULED.  Mr. King may testify on the matters he discussed
27  with various officials.  To the extent that Mr. King's conversations included information relayed from Plaintiff, such as the
    fact that Plaintiff believed he suffered a cardiac episode, this information is not being used to prove that, in fact, Plaintiff did
28  suffer a cardiac episode.  The information is relevant in that it shows certain officials were put on notice.  Defendants' other
    objections lack merit and are similarly OVERRULED.

Plaintiff had been denied his prescription medication and believed that he had suffered a heart attack. (Id. ¶ 11.)  Despite Mr. King's pleas, the record shows that Plaintiff was not seen by a nurse or a doctor until the morning of the next day.

Taking Plaintiff's evidence as true, there is a genuine dispute as to whether a public employee (Officer Alanis or another county employee) knew or had reason to know that Plaintiff was in need of immediate medical care yet failed to summon such care.  See Zeilman v. County of Kern, 168 Cal. App. 3d 1174, 1186 (Ct. App. 1985) (a governmental entity's knowledge of an individual's immediate need for medical care and the reasonableness of the governmental entity's response are ordinarily questions of fact that should not be decided in a summary judgment context).  Accordingly, Defendants' motion for summary judgment is DENIED with respect to this claim.

## 2.      Monell Claim (Twelfth Cause of Action)

Municipalities and other local government units are "persons" subject to liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  A municipality, however, cannot be held liable solely because it employs a tortfeasor under a theory of *respondeat superior*.  Id. at 691.  Instead, the municipality itself must cause the constitutional deprivation.  Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).  Thus, to prevail against a municipality under § 1983, a plaintiff must establish that: (1) he was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to his constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation.  See Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. School Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

Plaintiff claims that his constitutional right to adequate medical care was violated because the County maintains polices that interfere with an inmate's access to prescription medication and fails to properly train and supervise jail staff to ensure that inmates are provided with prescription medication. In moving for summary judgment, the County argues that: (a) Plaintiff did not suffer a constitutional deprivation with respect to his medical care; (b) the County does not have a policy that interferes with an inmate's access to prescription medication; and (c) the County properly trains and supervises its jail staff.  The Court addresses each argument below.

1                              **a.      Constitutional Deprivation**

2          A detainee's constitutional right to adequate medical care is provided for by the Due Process

3  Clause of the Fourteenth Amendment.  See Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir.

4  2003).  The Due Process Clause of the Fourteenth Amendment "imposes, at a minimum, the same duty

5  the Eighth Amendment imposes: persons in custody have the established right to not have officials

6  remain deliberately indifferent to their serious medical needs." Gibson v. County of Washoe, 290 F.3d

7  1175, 1187 (9th Cir. 2002).  A medical need is serious "if the failure to treat the condition could result

8  in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith,

9  974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104

10 F.3d 1133 (9th Cir. 1997).  An official acts with deliberate indifference if he "knows of and disregards

11 an excessive risk to inmate health or safety." Gibson, 290 F.3d at 1188-89 (quoting Farmer v. Brennan,

12 511 U.S. 825, 837 (1994)).  "[T]he official must both be aware of facts from which the inference can be

13 drawn that a substantial risk of serious harm exists, *and he must also draw that inference*." Farmer, 511

14 U.S. at 837 (emphasis added).

15         There is no dispute that Plaintiff's history of heart failure and back pain, and resulting need for

16 prescription medication, constitute serious medical needs.  Where the parties disagree is on the issue of

17 deliberate indifference.  The County maintains that no official acted with deliberate indifference with

18 respect to Plaintiff's serious medical needs.  The County stresses that whenever Plaintiff indicated that

19 he was in need of medical attention, he was appropriately evaluated and treated.  Plaintiff counters that

20 numerous probation officers and jail staff were informed of Plaintiff's health condition and need for

21 medication, yet his needs were ignored.

22         The record does not indicate deliberate indifference on the part of Nurse Rost, Nurse Figueroa,

23 or Doctor Ruvalcaba.  It is undisputed that Nurse Rost properly screened and evaluated Plaintiff during

24 the booking process and that Nurse Rost had no reason to believe that Plaintiff was in need of urgent

25 medical care.  (See Doc. 76, Decl. of Nurse Rost, ¶¶ 3-5.)  As to Nurse Figueroa and Doctor Ruvalcaba,

26 the record shows that the two tended to Plaintiff on two occasions.  First, on February 13, 2007, Nurse

27 Figueroa and Doctor Ruvalcaba responded to Plaintiff's complaints of chest pain by checking his vital

28 signs and by providing Plaintiff nitroglycerin tablets.   The nitroglycerin tablets appeared to alleviate

Plaintiff's pain, and therefore Plaintiff was discharged with additional nitroglycerin tablets to be taken as needed.[2]  There is nothing here to suggest deliberate indifference.  To the extent that Plaintiff argues that Nurse Figueroa and Doctor Ruvalcaba should have provided Plaintiff other medications, this does not provide a sufficient basis for showing deliberate indifference.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (difference in medical opinion over the best course of treatment does not amount to deliberate indifference).

Second, in the morning of February 14, 2007, Nurse Figueroa and Doctor Ruvalcaba examined Plaintiff again for chest pain.  After Nurse Figueroa examined Plaintiff's vital signs, Doctor Ruvalcaba ordered that an EKG be taken.  When the EKG revealed minor abnormalities in Plaintiff's heartbeat, Doctor Ruvalcaba had Plaintiff promptly transported to a hospital for further monitoring.  Again, there is nothing here to suggest that Nurse Figueroa or Doctor Ruvalcaba acted with deliberate indifference to Plaintiff's medical needs.

The record paints a different picture regarding Officer Alanis, Lieutenant Rinehart, Probation Services Manager Emilio Valle, and Sergeant McGill.  As discussed above, Plaintiff's attorney, Mark King, contacted these officials on February 13, 2007 and informed each of Plaintiff's heart condition, Plaintiff's belief that he had suffered a heart attack, and Plaintiff's need for prescription medication.  Yet, there is no indication that any of these individuals made any attempt to address Plaintiff's serious medical needs.  Viewing the record in the light most favorable to Plaintiff, there is a genuine dispute as to whether these officials acted with deliberate indifference and violated Plaintiff's constitutional right

---

[2] Plaintiff requests that the Court take judicial notice of the medical definition of nitroglycerin as provided by the United States National Library of Medicine.  Plaintiff's request is GRANTED.  See, e.g., Lee v. Frederick, 519 F. Supp. 2d 320, 325 n.3 (W.D.N.Y. 2007) (taking judicial notice of medical definition provided by the National Library of Medicine). According to the National Library of Medicine:

> Nitroglycerin spray and tablets are used to treat episodes of angina (chest pain) in people who have coronary artery disease (narrowing of the blood vessels that supply blood to the heart).  The spray and tablets may also be taken just before activities that may cause episodes of angina in order to prevent the angina from occurring.  Nitroglycerin extended-release (long-acting) capsules are used to prevent episodes of angina in people who have coronary artery disease.  The extended-release capsules can only be used to prevent angina attacks; they cannot be used to treat an attack once it has begun.  Nitroglycerin is in a class of medications called vasodilators.  It works by relaxing the blood vessels so the heart does not need to work as hard and therefore does not need as much oxygen.

See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000080/.

1   to adequate medical care.[3]

2   **b.     Policy of Interference**

3   To impose liability on a municipality, the claimed constitutional violation must be the result of

4   a municipal policy or custom.  <u>Monell</u>, 436 U.S. at 694.  A policy or custom may be shown in one of

5   three ways: (1) an express policy; (2) a longstanding practice or custom; or (3) action by an official with

6   final policymaking authority.  <u>Delia v. City of Rialto</u>, 621 F.3d 1069, 1081-82 (9th Cir. 2010), reversed

7   on other grounds by <u>Filarsky v. Delia</u>, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012); <u>see also</u> <u>Gillette</u>, 979

8   F.2d at 1346-47.

9   Plaintiff does not specifically identify and challenge an express County policy that the officials

10  acted pursuant to in denying Plaintiff medical attention or prescription medication.  Nor does Plaintiff

11  identify an official with final policymaking authority whose actions deprived Plaintiff of medical care

12  or interfered with Plaintiff's access to prescription medication.  Indeed, out of all the officials identified

13  by Plaintiff, the only official who apparently held a supervisorial role is Probation Services Manager

14  Emilio Valle.  Yet, there is absolutely no indication that Mr. Valle had control over Plaintiff's medical

15  care, let alone the authority to set policy regarding Plaintiff's access to prescription medication.  <u>See</u>

16  <u>McMillian v. Monroe</u>, 520 U.S. 781, 784-85 (1997) (an official who has the power to act in an "all or

17  nothing manner" and whose edicts represent official government policy on a particular issue has final

18  policymaking authority).

19  This leaves the second route in which Plaintiff may establish a policy or custom under <u>Monell</u>:

20  a longstanding practice or custom.  A longstanding practice or custom is one that is so "persistent and

21  widespread" that it constitutes a "permanent and well settled" governmental policy.  <u>Trevino v. Gates</u>,

22  99 F.3d 911, 919 (9th Cir. 1996).  "Liability for improper custom may not be predicated on isolated or

23  sporadic incidents; it must be founded upon practices of sufficient *duration, frequency and consistency*

24  that the conduct has become a traditional method of carrying out policy."  <u>Id.</u>  (emphasis added).  <u>See</u>

---

25

26  [3] Officer Alanis cites <u>Tater-Alexander v. County of Fresno</u>, Case No. 1:10-cv-01050-AWI-SMS, 2010 U.S. Dist. LEXIS 84539 (E.D. Cal. Aug. 18, 2010), and argues that arresting officers do not generally render medical treatment or make

27  decisions regarding administration of prescription medication.  While this may be true, it does not follow that Officer Alanis may completely disregard an inmate's known, serious medical needs.  Officer Alanis must still respond reasonably, and that might entail action apart from rending medical treatment or medication, such as summoning medical attention.  <u>See</u> <u>Farmer</u>,

28  511 U.S. at 844-45 (an official's duty is to respond reasonably); <u>Tater-Alexander</u>, 2010 U.S. Dist. LEXIS 84539, at * 37 (officers discharged their duty by transporting the plaintiff to a hospital).

1   Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987) ("Custom and usage, in the sense of persistent

2   and widespread . . . practices by municipal agents and employees, may be attributed to a municipality

3   when the duration and frequency of the practices warrants a finding of either actual or constructive

4   knowledge by the [municipality] . . . that the practices have become customary among its employees.")

5   (internal quotation marks omitted).

6        Here, Plaintiff's theory of liability appears to be that the officials' failure to act on information

7   that Plaintiff was in need of medical attention, in particular prescription medication, forms a pattern of

8   conduct that evidences a longstanding custom of deliberate indifference.  The critical flaw in Plaintiff's

9   theory, however, is that his supporting evidence is confined to Mr. King's inability to obtain medical

10  attention for Plaintiff on a *single* day, February 13, 2007.  Plaintiff presents no evidence of any similar

11  incidents in which medical attention was denied or prescription medication interfered with at the jail,

12  either to himself on multiple days or to other inmates in the past.  As such, Plaintiff cannot establish a

13  practice that is so "persistent and widespread" that it constitutes a "permanent and well established"

14  County policy.  Trevino, 99 F.3d at 919.  See, e.g., Gorman v. City of San Diego, Case No. 08-cv-02345

15  IEG (RBB), 2012 U.S. Dist. LEXIS 70580 (S.D. Cal. May  21, 2012) (denying motion for a new trial

16  because three incidents of excessive force against a single person in one day are insufficient to show a

17  longstanding practice or custom).

18              **c.        Failure to Train and Supervise**

19        Plaintiff's other theory of liability is that the County failed to properly train and supervise jail

20  staff to ensure that inmates are provided with needed prescription medication.  The Supreme Court has

21  emphasized that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where

22  a claim turns on a failure to train [or supervise]." Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L.

23  Ed. 2d 417 (2011).  To prevail, a plaintiff must prove that the failure to train or supervise amounts to

24  deliberate indifference to the rights of those whom the untrained or unsupervised officials come into

25  contact.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Davis v. City of Ellensburg, 869 F.2d

26  1230, 1235 (9th Cir. 1989).

27        Deliberate indifference is a "stringent standard of fault," requiring proof that a municipality

28  disregarded a known or obvious consequence of its actions.  Bd. of County Comm'rs of Bryan County

20

1    v. Brown, 520 U.S. 397, 410 (1997).  This "ordinarily" requires a plaintiff to prove a pattern of similar

2    constitutional violations by untrained or unsupervised public employees sufficient to demonstrate that

3    the municipality had actual or constructive notice that a particular defect in its training or supervision

4    causes employees to violate constitutional rights.  See Connick, 131 S. Ct. at 1360; Bryan County, 520

5    U.S. at 410.  In this way, a municipality's continued adherence to an approach that it knows or should

6    know failed to prevent unconstitutional conduct by its employees can be said to have been the result of

7    deliberate indifference.  Connick, 131 S. Ct. at 1361.

8         "[I]n a *narrow* range of circumstances," a pattern of similar violations may not be necessary to

9    show deliberate indifference."  Id. (quoting Bryan County, 520 U.S. at 409) (emphasis added).  If the

10   need for more or different training is "so obvious, and the inadequacy so likely to result in the violation

11   of constitutional rights," a local government may be held liable without proof of a pre-existing pattern

12   of violations.  Canton, 489 U.S. at 390.  These circumstances, however, are "rare."  Connick, 131 S. Ct.

13   at 1361.  The Supreme Court has hypothesized the following example:

14        [C]ity policymakers know to a moral certainty that their police officers will be required
           to arrest fleeing felons. The city has armed its officers with firearms, in part to allow
15        them to accomplish this task. Thus, the need to train officers in the constitutional
           limitations on the use of deadly force, can be said to be "so obvious," that failure to do
16        so could properly be characterized as "deliberate indifference" to constitutional rights.

17   Canton, 489 U.S. at 390 n.10 (internal citation omitted).

18        The facts presented in this case do not fall within the "rare" category of situations envisioned by

19   Canton where the need for training is patently obvious.  See Young v. City of Augusta, 59 F.3d 1160,

20   1171-72 (11th Cir. 1995) (concluding that the need for training in ensuring that medication is dispensed

21   to inmates as prescribed is not obvious within the meaning of Canton).  It was therefore incumbent on

22   Plaintiff to offer evidence of a pattern of similar constitutional violations by untrained or unsupervised

23   employees sufficient to show that the County had actual or constructive knowledge that a defect in its

24   training or supervision causes employees to violate the constitutional rights of inmates.  This Plaintiff

25   failed to do.  Again, as highlighted above, Plaintiff presents no evidence of similar incidents in which

26   medical attention was denied or prescription medication interfered with at the jail, either to himself on

27   multiple days or to other inmates in the past.  In the absence of such evidence, there can be no triable

28   issue on whether the County acted with deliberate indifference regarding its training and supervision.

1   Cf. Young, 59 F.3d at 1172-73 (triable issue as to deliberate indifference where the plaintiff presented

2   evidence that she was denied adequate medical care over the span of several months; that at least three

3   different jailors were responsible for her care during this period; and that other inmates were similarly

4   denied adequate medical care).

5          Plaintiff's opposition does not convince the Court otherwise.  Plaintiff's entire argument as set

6   forth in his opposition can be distilled into one sentence:

7          Despite all of Defendants' customs, policies and practices which are supposedly intended
           to provide adequate and timely medical attention, [Plaintiff] was deprived timely and
8          adequate care.

9   (Doc. 82, Pl.'s Opp'n, at 23.)  What Plaintiff fails to appreciate is that this is not sufficient to impose

10  liability on the County; Plaintiff must establish a policy or custom of deliberate indifference.  Absent

11  this, Plaintiff's allegations amount to nothing more than a theory of *respondeat superior*, which cannot

12  support a claim under Monell.  For all the reasons discussed above, the Court concludes that Plaintiff

13  has not presented evidence sufficient to demonstrate a genuine dispute as to the existence of a County

14  policy, practice, or custom of deliberate indifference.  Accordingly, Defendants' motion for summary

15  judgment is GRANTED on this claim.

16  **IV.    CONCLUSION**

17          In accordance with the above, the Court:

18          1.      GRANTS the County summary judgment with respect to Plaintiff's Monell claim; and

19          2.      DENIES Defendants' motion for summary judgment in all other respects.

20  IT IS SO ORDERED.

21  **Dated:      June 6, 2012**                      **/s/ Lawrence J. O'Neill**
                                                      UNITED STATES DISTRICT JUDGE
22

23

24

25

26

27

28