IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LORAN QUINN, | Case No. 1:10-cv-01617 LJO BAM |
| Plaintiff, | ORDER ON THE PARTIES' POST-TRIAL MOTIONS |
| vs. | (Docs. 174 & 175) |
| FRESNO COUNTY SHERIFF, et al., | |
| Defendants. | |

Currently pending before the Court are the parties' post-trial motions. Defendants County of Fresno ("the County") and Officer David Alanis ("Officer Alanis") (collectively "Defendants") have filed a motion for judgment as a matter of law ("JMOL") or, in the alternative, a new trial. Plaintiff James Loran Quinn ("Plaintiff") has filed a "proposed order" regarding the entrance of final judgment based on the special verdict. After careful consideration of the parties' submissions on these matters, the Court rules as follows.

**I.    BACKGROUND**

In this civil rights action, Plaintiff claims that Defendants wrongfully arrested him based on an erroneous probation violation. The issue proceeded to trial, and on August 10, 2012, a jury returned a verdict in Plaintiff's favor on four separate causes of action: (1) false arrest under 42 U.S.C. § 1983; (2) false imprisonment under California tort law; (3) violation of California Civil Code section 52.1 ("the Bane Act"); and (4) negligence. In terms of compensation, the jury awarded Plaintiff $425,000 in total

damages. The award included $21,000 in past economic damages for false arrest, $4,000 in past non-economic damages for false imprisonment, and $400,000 in past non-economic damages for violation of the Bane Act.

Following trial, the parties filed the motions now pending before the Court. On September 7, 2012, Defendants filed their motion for JMOL or a new trial. On September 14, 2012, Plaintiff filed the proposed order regarding the entrance of final judgment based on the special verdict. Defendants filed a response to Plaintiff's proposed order on September 17, 2012.[1] Plaintiff filed an opposition to Defendants' motion for JMOL or a new trial on September 25, 2012. Lastly, Defendants filed a reply in connection with their motion on October 2, 2012.

## II.   DISCUSSION

### A.   Proposed Form of Judgment

Plaintiff indicates that the parties are in dispute as to the form of the final judgment. Plaintiff maintains that the $4,000 in non-economic damages awarded under the false imprisonment claim are duplicative, in part, of the $400,000 in non-economic damages awarded under the Bane Act. Plaintiff therefore argues that final judgment should be entered on all of his claims in the single, total amount of $421,000 ($400,000 + $21,000). Plaintiff also argues that the County is jointly and severally liable on all of the claims.

Defendants, on the other hand, argue that the special verdict form should *not* be disrupted and final judgment should be entered accordingly. According to Defendants, (1) Plaintiff has waived any objections to the special verdict form by failing to raise them prior to the dismissal of the jury; (2) the Bane Act is an independent cause of action that should not be merged with other causes of action; and (3) Plaintiff's damages for his constitutional deprivation are fully encompassed in his § 1983 false arrest claim. Lastly, Defendants argue that there is no joint and several liability; rather, the County is simply indemnifying Officer Alanis in this action.

The Court construes Plaintiff's proposed order as a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). Contrary to Defendants' assertions, Plaintiff did not waive his

---

[1] Defendants actually filed two responses. (ECF Nos. 177 & 178.) Because Defendants' second response (ECF No. 178) appears to fully incorporate and expand upon Defendants' first response (ECF No. 177), the Court will consider the latter to be Defendants' final response.

ability to raise an issue about the damages awards.  Plaintiff waived his right to challenge the verdict form itself by not objecting to it before the jury was dismissed, Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1009 (9th Cir. 2001), but that is not the challenge Plaintiff is presently raising. See Duran v. Town of Cicero, 653 F.3d 632, 642-43 (7th Cir. 2011) (the specter of duplicative damage awards is properly raised in a Rule 59(e) motion and the issue is not waived by a party's failure to object during trial).[2]

Turning to the merits of the issue, it is well-established that "[d]ouble recovery is disfavored." Kissell Co. v. Gressley, 591 F.2d 47, 51 (9th Cir. 1979).  "Regardless of the nature or number of legal theories advanced by the plaintiff, [he or she] is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence." Ambassador Hotel Co. v. Wei-Shuan Inv., 189 F.3d 1017, 1032 (9th Cir. 1999) (quoting Tavaglione v. Billings, 4 Cal. 4th 1150, 1158 (1993)). Here, this case has proceeded under the assumption that a claim for false arrest and a claim under the Bane Act entail overlapping injury: an arrest without probable cause. (ECF No. 36 at 19-20.)  Indeed, this has been the source of significant contention, as *Defendants* have objected on several occasions to the claims being treated the same.  (See ECF No. 158 at 1-3; ECF No. 160 at 2-3; infra at Section B.) In any event, allowing Plaintiff to recover full non-economic damages on his false imprisonment claim and full non-economic damages on his Bane Act claim would result in double recovery.  This cannot stand.  See Duran, 653 F.3d at 642 ("A judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law.").

That said, the Court disagrees with Plaintiff's solution.  The Court is not inclined to amass all the claims into one and award a single amount.  Rather, the Court believes the better course is to follow the verdict form strictly, identifying each claim and the damages awarded thereunder.  Then, from the total award an offset of $4,000 in non-economic damages should be made in order to account for the duplication in the award.

As for the issue of joint and several liability, it appears that some of the parties' confusion may stem from the fact that the jury did not make any finding on the County's liability under California

---

[2] The Court admonishes Plaintiff for not complying with Local Rule 230(b).  Nevertheless, the Court addresses the merits of the motion as Defendants have had the full opportunity to respond and out of concern for judicial efficiency and resources.

3

Government Code section 815.2(a). That provision holds public entities vicariously liable for the torts of an employee if the employee's actions are taken within the scope of his employment. Absent such a finding, there is no joint and several liability.[3]

Nevertheless, this issue appears to be largely academic and without any practical consequence to this action. It is clear that the County is indemnifying Officer Alanis under California Government Code section 825. Therefore, unless the County has placed limitations on its indemnity agreement with Officer Alanis – and at this point, there is nothing to suggest that the County has – then there will be no obstruction to Plaintiff's ability to recover in full, which is presumably Plaintiff's concern and reason for raising the issue. The solution, then, is simple: the County shall represent to Plaintiff whether anything in its indemnity agreement would preclude Plaintiff from recovering in full. Alternatively, the County may stipulate that it is liable under section 815.2. The Court expects that this fully resolves the issue; if it does not, the parties shall file further briefing on this matter, limited to four pages per party, no later than December 19, 2012.

**B.    Defendants' Motion for JMOL or a New Trial**

**1.    Legal Standards**

**a.    JMOL**

Rule 50(a) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A)    resolve the issue against the party; and
>
> (B)    grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). If the court does not grant the motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the questions raised by the motion. Fed. R. Civ. P. 50(b). Once judgment is entered, the moving party may file a renewed motion for judgment as a matter of law and may also request a new

---

[3] There is no vicarious liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Thus, the County cannot be held jointly and severally liable on Plaintiff's § 1983 false arrest claim because Plaintiff did not allege nor prevail on a claim against the County itself.

4

trial under Federal Rule of Civil Procedure 59.  Id.

"A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).  As such, the pertinent question for the court on a renewed motion for judgment as a matter of law is "whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006).  In making this determination, the court does not weigh evidence or assess the credibility of witnesses.  Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).  Instead, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  Id.

### b. New Trial

Pursuant to Rule 59, a district court has discretion to grant a new trial "after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Historically recognized grounds for a new trial include claims that (1) the verdict is against the weight of the evidence; (2) the damages are excessive; and (3) the trial was not fair to the moving party.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  Unlike a renewed motion for judgment as a matter of law, the court must "weigh the evidence as it saw it" and may set aside the verdict, even if it is supported by substantial evidence.  Id.  A new trial should be granted "if, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (citations omitted).

## 2. Analysis

Defendants contend that they are entitled to judgment as a matter of law or, in the alternative, a new trial because: (a) the Court's jury instruction on the Bane Act was inconsistent with California law; (b) there is no evidence to support the jury's finding of liability under the Bane Act; (c) Officer Alanis had probable cause to arrest Plaintiff as a matter of law; (d) Officer Alanis is entitled to qualified immunity; (e) Officer Alanis is entitled to immunity pursuant to California Penal Code section 847(b); (f) there is no evidence to support the jury's award of $21,000 in economic damages; and (g) the jury's

award of $400,000 in non-economic damages under the Bane Act is excessive and should be remitted. The Court evaluates each argument below.

### a. Jury Instruction on the Bane Act

Defendants contend that the Court erred by removing the phrases "threatening or committing violent acts" and "commit violence" from its jury instruction on the Bane Act. Defendants argue that absent such language, the jury instruction was "inconsistent" with the "Legislature's intent to address more egregious conduct than mere negligence under [the Bane Act]." (ECF No. 174-1 at 17-18.) This argument is unpersuasive.

CACI 3025 provides:

> [Name of plaintiff] claims that [name of defendant] intentionally interfered with [or attempted to interfere with] [his/her] civil rights *by threatening or committing violent acts*. To establish this claim, [name of plaintiff] must prove all of the following:
>
> 1. That [name of defendant] interfered with [or attempted to interfere with] [name of plaintiff]'s right [insert alleged constitutional or statutory right] *by threatening or committing violent acts*;
>
> 2. [That [name of plaintiff] reasonably believed that if [he/she] exercised [his/her] right [insert right, e.g., "to vote"] [name of defendant] *would commit violence against [him/her]* or [his/her] property;]
>
> 3. That [name of plaintiff] was harmed; and
>
> 4. That [name of defendant]'s conduct was a substantial factor in causing [name of plaintiff]'s harm.

CACI No. 3025 (emphasis added). In contrast, the Court's instruction provided:

> Plaintiff claims that Officer Alanis intentionally interfered with or attempted to interfere with his civil rights *by threats, intimidation, and/or coercion*. To establish this claim, Plaintiff must prove all of the following:
>
> 1. that Officer Alanis interfered with or attempted to interfere with Plaintiff's constitutional right to be free from unreasonable seizure *by threats, intimidation, or coercion*;
>
> 2. that Plaintiff reasonably believed that if he exercised his constitutional right to be free from unreasonable seizure Officer Alanis *would use force against him*;
>
> 3. that Plaintiff was harmed; and
>
> 4. that Officer Alanis' conduct was a substantial factor in causing Plaintiff's harm.

(ECF No. 169) (emphasis added).

As the Court explained in its prior order on this matter, the Court elected to modify the CACI

6

instruction in order to better harmonize the facts in this case to the elements of the claim. Critically, the Court's use of the phrase "by threats, intimidation, or coercion" mirrors the language of the Bane Act itself. See Cal. Civ. Code § 52.1(a); see also Austin B. v. Escondido Union School Dist., 149 Cal. App. 4th 860, 883 (Ct. App. 2007) ("The essence of a Bane Act claim is that the defendant, by the specified improper means *(i.e., 'threats, intimidation or coercion')*, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.") (emphasis added). And as for the Court's use of the phrase "would use force against him" in lieu of the phrase "would commit violence against him," there is no possibility that the jury construed the Court's language to mean that conduct arising to mere negligence could give rise to liability under the Bane Act. Accordingly, because Defendants have failed to show that the Court's modifications to the jury instruction were improper and resulted in prejudice to them, Defendants are not entitled to relief on this basis. See Swinton v. Potomac Corp., 270 F.3d 794, 802 (9th Cir. 2001) ("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered.").

Next, Defendants contend that the Court erred by *not adding* language to the CACI instruction. Defendants sought to add the following language to the instruction in order to differentiate a claim under the Bane Act from a claim for false arrest:

> Bane Act liability requires an attempted or completed act of interference with a legal right accompanied by a form of coercion. Liability only applies when a defendant intends by his or her conduct to interfere with a separate affirmative right enjoyed by a plaintiff; a wrongful arrest and detention, without more, cannot constitute force, intimidation, or coercion for purposes of Bane Act liability. A showing of coercion independent from the coercion inherent in a wrongful arrest or detention is required; thus, Plaintiff must prove Officer Alanis engaged in threats, intimidation or coercion separate and independent from the coercion which is inherent or incidental to a wrongful arrest. Mere speech alone is not sufficient to support an action brought pursuant to the Bane Act; unless the speech threatens violence against a specific person or group of persons.

(ECF No. 136 at 10-11.) For this proposition, Defendants relied, in part, on the recent California Court of Appeal case, Shoyoye v. County of Los Angeles, 203 Cal. App. 4th 947 (Ct. App. 2012). Therein, the California Court of Appeal held that the Bane Act "requires a showing of coercion independent from the coercion inherent in a wrongful detention itself." Id. at 960.

The Court rejects Defendants' argument for the same reasons it did when Defendants raised the

7

issue the previous two times.  (See ECF No. 158 at 1-3; ECF No. 160 at 2-3.)  Defendants' citation to two recent federal district court cases that have decided to follow Shoyoye does not lead to the Court to a different result.  This Court continues to be of the opinion that there is a conflict in the law regarding this issue and that Shoyoye is persuasive, but not definitive.  See, e.g., Gillan v. City of San Marino, 147 Cal. App. 4th 1033 (Ct. App. 2007) (hinging liability under section 52.1 on whether there was probable cause for an arrest, and upholding a jury award in favor of the plaintiff where arrest was not supported by probable cause).  Accordingly, Defendants are not entitled to relief on this basis.

### b. Liability Under the Bane Act

Defendants argue that the jury's finding of liability under the Bane Act is improper as a matter of law because there was no evidence demonstrating that Officer Alanis used threats, intimidation or coercion apart from whatever coercion may have resulted from the authorization of Plaintiff's arrest as required by Shoyoye.  This argument is unavailing for the same reasons discussed above.  Accordingly, Defendants are not entitled to relief on this basis.

### c. Probable Cause

Defendants argue that, as a matter of law, the jury improperly found that Officer Alanis lacked probable cause to authorize Plaintiff's arrest.  In Defendants' view, Officer Alanis had probable cause because his review of the Adult Probation System ("APS") and Plaintiff's hard copy file indicated that Plaintiff had failed to file monthly report forms ("MRFs") for the months of December 2006, January 2007, and February 2007.

Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been committed by the person being arrested.  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).  Probable cause is an objective standard that takes into account the totality of the circumstances known to the arresting officer at the time of the arrest.  See id.; Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).  Although conclusive evidence of guilt is not necessary to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough . . . ."  McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984).  There must be a "fair probability" that the person to be arrested committed an offense.  Beier, 354 F.3d at 1065.

8

Here, the jury explicitly found that Officer Alanis reviewed the APS and Plaintiff's hard copy file. (ECF No. 168, Special Interrogatories, ¶ 2-3). However, the jury also explicitly found that Officer Alanis had reason to know that these sources were inaccurate or might otherwise be unreliable. (Id. ¶ 4.) The evidence supporting the jury's finding includes the testimony of Plaintiff and his expert, which show the following when viewed in the light most favorable to Plaintiff: (1) Officer Alanis was aware that Plaintiff had been to the probation department on December 4, 2006; (2) Officer Alanis was aware that Plaintiff claimed he had been filing his MRFs on time; (3) Officer Alanis was aware that Plaintiff claimed he had written proof in his nearby office that he timely filed the disputed MRFs; and (4) two-month delays in the processing and filing of MRFs periodically do occur.

Based on the above, there is sufficient evidence in the record to support the jury's conclusion that an officer of reasonable caution would not have believed, at that moment, that Plaintiff had failed to file the disputed MRFs.[4] An officer of reasonable caution would have instead conducted a further investigation into the matter. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (in determining probable cause, officers may not disregard facts tending to dissipate probable cause); Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer need not conduct a 'mini-trial' before making an arrest, but probable cause does not exist when 'minimal further investigation' would have exonerated the suspect.") (internal citations omitted); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of the arrest. Reasonable avenues of investigation must be pursued especially when . . . it is unclear whether a crime had even taken place.").

### d. Qualified Immunity

Defendants maintain that Officer Alanis is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[4] The Court does not attach as much significance as Defendants apparently do on the exact timing of when Plaintiff was placed in handcuffs. Even if Detective Van Whye placed handcuffs on Plaintiff *before* Officer Alanis was contacted, it has not been shown that Detective Van Whye had established probable cause to arrest Plaintiff at that time; the basis and information underlying Detective Van Whye's actions are entirely unclear. Thus, even under this scenario the burden still remains on Officer Alanis to show probable cause for authorizing Plaintiff's arrest. See United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005) (an officer may not disregard facts tending to dissipate probable cause, and a person must be released from arrest if probable cause has dissipated).

9

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the context of an unlawful arrest, "the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest . . . ." Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011). If the Court answers either prong in the affirmative, the officer is entitled to qualified immunity.

Here, the Court has already determined that there is sufficient evidence in the record to support the jury's conclusion that Officer Alanis lacked probable cause to authorize Plaintiff's arrest. Thus, the only question remaining is whether it is "reasonably arguable" that Officer Alanis had probable cause to arrest Plaintiff. Id. In other words, in the absence of probable cause, Officer Alanis is still entitled to qualified immunity if a reasonable officer could have believed that the arrest was lawful, in light of clearly established law and the information in Officer Alanis' possession. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1443 (9th Cir. 1991).

When viewed in the light most favorable to Plaintiff, the evidence shows the following: (1) in the face of Plaintiff's assertions that he had filed his MRFs, there were conflicting facts on the central issue relating to probable cause; (2) Plaintiff offered to produce exculpatory evidence in the form of written proof; (3) Plaintiff indicated that the exculpatory evidence was located in his nearby office; (4) there were no exigent circumstances requiring immediate arrest; and yet (5) Officer Alanis authorized Plaintiff's immediate arrest without any attempt at clarifying the situation. Based on the foregoing, the Court concludes that no reasonable officer could believe that this arrest was lawful; therefore, Officer Alanis is not entitled to qualified immunity. See Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003) ("[O]nce probable cause is established, an officer is under no duty to investigate further or look for additional evidence which may exculpate the accused. *An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause.*") (emphasis added) (internal citations omitted).

The Court's conclusion is supported by the Eighth Circuit's reasoning and decision in Kuehl. There, the Eighth Circuit concluded that an officer was not entitled to qualified immunity from a claim for false arrest. In reaching its conclusion, the Eighth Circuit found three factors determinative. First,

the officer disregarded the plaintiff's exculpatory explanation of the events in dispute. Kuehl,173 F.3d at 651. Second, the officer failed to interview an available eye witness who was attempting to provide the officer with an account of the events that would have exonerated the plaintiff and negated probable cause. Id. Third, there were no exigent circumstances precluding the officer from conducting a more thorough investigation. Id.

All three of Kuehl's factors are present in this case: (1) Officer Alanis disregarded Plaintiff's assertion that he had filed the disputed MRFs; (2) Officer Alanis failed to investigate readily available evidence that would have exonerated Plaintiff and fully negated probable cause; and (3) there were no exigent circumstances requiring Plaintiff's immediate arrest in lieu of a more thorough investigation of the facts. Accordingly, Defendants are not entitled to relief on this basis.

### e.     Immunity Under Section 847(b)(1)

Defendants argue that Officer Alanis is also entitled to immunity under California Penal Code section 847(b). Section 847(b)(1) provides that a peace officer cannot be held liable for false arrest or false imprisonment if the arrest was lawful or the peace officer had reasonable cause to believe that the arrest was lawful at the time of the arrest. See also O'Toole v. Superior Court, 140 Cal. App. 4th 488, 549 (Ct. App. 2006). Here, as discussed above, there is adequate evidence in the record to support the conclusion that Plaintiff's arrest was unlawful and that Officer Alanis did not have reasonable cause to believe that the arrest was lawful. Accordingly, Defendants are not entitled to relief on this basis.

### f.     Economic Damages Awarded Under § 1983

Defendants argue that the jury's award of $21,000 in economic damages was improper for two reasons: (1) the oral agreement between Plaintiff and Martin Nonini ("Mr. Nonini") is unenforceable under the statute of frauds; and (2) Plaintiff's lost profits are uncertain and speculative. The Court finds Defendants' first argument unpersuasive. Defendants offer no authority supporting their proposition that the speculativeness of a damages claim may hinge on whether the underlying agreement between the plaintiff and a *non-party* is actually enforceable between the two. The Court therefore focuses on Defendants' second argument.

"As a general matter, damages which result from a tort must be established with reasonable certainty." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993) (citation omitted). In

the specific context of lost profits, damages are recoverable when "their nature and occurrence can be shown by evidence of reasonable reliability . . . [and] where the evidence makes reasonably certain their occurrence and extent." Grupe v. Glick, 26 Cal. 2d 680, 692 (1945). However, the plaintiff need not establish the amount of lost profits with mathematical precision. See Lewis Jorge Const. Management, Inc., Pomona Unified Sch. Dist., 34 Cal. 4th 960, 975 (2004).

The Court views Plaintiff's claimed lost profits as consisting of two parts. The first part relates to the oranges that Plaintiff was due to deliver on the day of his arrest. The economic damages suffered in relation to this delivery was reasonably certain to occur and there is a reasonable basis to determine the amount. Plaintiff testified that he was due to deliver 54 boxes of oranges at $45/box to vendors in Monterey and Santa Cruz. (Trial Tr., Plaintiff, at 391:20-393:6.) In addition, Mr. Nonini testified that he agreed to split profits with Plaintiff on a 50/50 basis. (Trial Tr., Nonini, at 333:6-18, 335:10-336:4.) Lastly, Wayde Mangiarelli ("Mr. Mangiarelli") testified that Plaintiff paid him $10/hr plus gas to drive him to deliver the oranges. (See Trial Tr., Mangiarelli, 289:16-19.) Thus, pegging Mr. Mangiarelli's expenses at $200, Plaintiff's lost profits on this delivery amounts to $1,015 (54 boxes x $45/box x 0.50 split - $200 expenses).

The second part relates to the oranges that Plaintiff claims he could have sold but for his arrest. This includes 1,400 boxes of oranges that were in left in cold storage. There is no evidence in the record supporting the conclusion that these oranges would have been sold. Plaintiff offered no information regarding the nature of the oral agreement he had with Whole Foods, or whether he had any agreement with any other buyer. Plaintiff simply assumed that he would have sold all 1,400 boxes because oranges were in high demand at the time. This is speculation. See Greenwich S.F., LLC v. Wong, 190 Cal. App. 4th 739, 766 (Ct. App. 2010) (finding the plaintiff's claim for lost profits to be too speculative because the plaintiff assumed, rather than actually proved, the reasonable certainty of future events upon which the damages claim depended).

A court must uphold the jury's finding on damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or otherwise based on speculation and guesswork. Del Monte Dunes v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996). Here, the Court finds that the assumption that Plaintiff would have sold 1,400 boxes of oranges but for his arrest to be speculative

and clearly not supported by the evidence.  Accordingly, Defendants are entitled to relief on this matter.  Unless Plaintiff accepts a remittitur to $1,015 in economic damages, Defendants' motion for a new trial on this issue will be granted.

        **g.**        **Non-Economic Damages Awarded Under the Bane Act**

Defendants argue that the jury's award of $400,000 in non-economic damages under the Bane Act is excessive.  The Court agrees.

When reviewing for excessiveness, a court views the evidence concerning damages in the light most favorable to the prevailing party.  See Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir. 1983).  The jury's finding on the amount of damages should then only be disturbed if the amount is "grossly excessive or monstrous."  Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003).  If the court concludes that the award is excessive, it may remedy the situation in one of two ways: it may grant the losing party's motion for a new trial or it may deny the motion conditioned upon the prevailing party accepting a remittitur.  Fenner, 716 F.2d at 603.  Generally, the proper amount of a remittitur is the maximum amount that can be sustained by the evidence.  See Los Angeles Memorial Coliseum Comm'n v. NFL, 791 F.2d 1356, 1360 (9th Cir. 1986).

The most significant aspect of Plaintiff's damages was his claim that he suffered a recurrence of pre-existing atrial fibrillation resulting in his being transported to the emergency room from jail. While a well-educated cardiologist testified (Khoi Le, M.D.), the physician was never given a hypothetical nor did the doctor ever provide an opinion on whether the incident *caused* the atrial fibrillation.  Many medical causes were testified to, most having nothing to do with the incident, including high blood pressure, diabetes, high cholesterol, stimulants, stress and genetics.  When asked what could bring on fibrillation, the answer was that it is "very unpredictable" and that "sometimes it just happens spontaneously without warning or provocation."  The concept of medical probability was never breached.  Medical causation is not something that can be presented without medical expert opinion testimony.  Here it was absent.

Here, when viewed in the light most favorable to Plaintiff, the evidence shows that he did suffer stress and anxiety as a result of his arrest.  The stress might have exacerbated Plaintiff's pre-existing heart condition that included prior fibrillation issues, that may have resulted in his hospitalization for

an irregular heartbeat. Nevertheless, Plaintiff's condition was treated and Plaintiff was released from custody shortly thereafter. Based on Plaintiff's testimony and the inferences that can be drawn from Plaintiff's other circumstances, the Court concludes that the evidence supports, at most, an award of $100,000 in damages.[5] If Plaintiff elects to decline the remittitur to $100,000, Defendants are entitled to a new trial on this issue.

### III. CONCLUSION

For the reasons set forth above, the Court:

1. GRANTS in part and DENIES in part Plaintiff's proposed form of final judgment. The parties shall file a joint proposed form of final judgment consistent with this order by no later than December 21, 2012.

2. DENIES Defendants' motion for judgment as a matter of law on the issue of liability.

3. GRANTS Defendants' motion for a new trial on the issue of damages only UNLESS within 10 calendar days from the date of this order, Plaintiff:

    a. agrees to accept in writing a remittitur of the economic damages under the § 1983 false arrest claim to $1,015; and

    b. agrees to accept in writing a remittitur of the non-economic under the Bane Act to $100,000.

4. If the remittitur is accepted in full, then Defendants' motion for a new trial on damages is denied. If the remittitur is rejected or not responded to in the time frame allotted, then the Court will set a Trial Setting Conference on the issue of damages only.

IT IS SO ORDERED.

Dated:    **December 14, 2012**                    /s/ Lawrence J. O'Neill
                                                                UNITED STATES DISTRICT JUDGE

---

[5] This does not include any offset for duplicative damages discussed in Section A.